# Illinois Official Reports

## Appellate Court

---

*Old Second National Bank v. Indiana Insurance Co.*,
2015 IL App (1st) 140265

---

| | |
|---|---|
| Appellate Court Caption | OLD SECOND NATIONAL BANK, Plaintiff-Appellee, v. INDIANA INSURANCE COMPANY, Defendant (Brothers Future Holdings, LLC; Custom Gourmet Concepts, LLC; and Arthur Follenweider, Plaintiffs; Peerless Indemnity Insurance Company, Defendant-Appellant; and Assurance Agency, Ltd., Anthony Parato, and Wendy Coleman, Defendants). |
| District & No. | First District, Sixth Division<br>Docket No. 1-14-0265 |
| Filed | March 20, 2015 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 11-L-003598; the Hon. Raymond Mitchell, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Peter E. Kanaris, Jefferson D. Patten, and Christopher Henning, all of Fisher Kanaris, P.C., of Chicago, for appellant.<br><br>Michael R. Collins and John P. Collins, both of Collins & Collins, of Chicago, for appellee. |
| Panel | PRESIDING JUSTICE HOFFMAN delivered the judgment of the court, with opinion.<br>Justices Hall and Rochford concurred in the judgment and opinion. |

**OPINION**

¶ 1 This is an appeal from orders of the circuit court awarding a judgment in favor of Old Second National Bank (Old Second or the bank) in the sum of $816,833.13 plus prejudgment interest against Peerless Indemnity Insurance Co. (Peerless). Peerless argues that the circuit court erred in granting summary judgment in favor of Old Second on its claim for breach of contract arising from its denial of coverage under a policy of insurance it issued. Peerless contends that the court misinterpreted the provisions of the insurance policy to require coverage of Old Second under the policy's mortgage clause when the loss at issue was not covered in the first instance. Alternatively, Peerless argues that the circuit court abused its discretion in awarding interest to Old Second on its judgment. For the reasons that follow, we affirm.

¶ 2 The underlying facts of this case are not in dispute. The Swissland Packing Company (Swissland), a slaughterhouse and meat-packing business, formerly occupied a 35,500-square-foot building in Askum, Illinois (the building). In 2005, Swissland sold the business, and all operations at the building ceased. In late 2007, ownership of the building was acquired by Brothers Future Holdings, LLC[1] (Brothers), a limited liability company owned by Arthur and David Follenweider, with the intention that a portion of the building would be used in a new custom contract cooking venture to be conducted by Custom Gourmet Concepts, LLC (Gourmet Concepts). However, in 2008, David died unexpectedly, and no business operations were ever established or conducted in the building. The building was vacant from 2005 throughout the proceedings in this case.

¶ 3 In August of 2007, the existing mortgage covering the indebtedness for the building was transferred to Old Second. In June of 2008, Brothers applied for insurance on the building through Assurance Agency, Ltd. (Assurance), its insurance broker. Assurance had a relationship with Peerless whereby it could solicit and process applications for coverage with Peerless and could bind Peerless to certain types of insurance agreements. In this case, Brothers' insurance application was processed and submitted electronically by Wendy Coleman, an employee of Assurance, and contained several erroneous statements regarding the building. Specifically, the application sought coverage for the building, premises and office space, but incorrectly characterized the building as 100% owner-occupied and comprised of only 3,990 square feet rather than nearly 35,500. Based upon this application, a policy was issued by Peerless effective June 17, 2008, through June 17, 2009 (initial policy). Brothers had no role in the completion of the electronic application and was never provided with a copy of the application or the initial policy. Old Second was not designated as a mortgage holder on the initial policy.

¶ 4 In June of 2009, the Peerless policy was automatically renewed for the period of June 17, 2009, through June 17, 2010 (renewal policy). In July 2009, Old Second's collateral department contacted Assurance and requested that Old Second be added to the policy as a mortgage holder. However, Old Second was never asked to complete any type of insurance application or renewal form, nor did Old Second ever receive a copy of the renewal policy.

---

[1]The company is designated inconsistently throughout the record as Brothers Future "Holding" or "Holdings." In accordance with the parties' briefs on appeal, we refer to the corporation as Brothers Future Holdings, LLC.

Rather, to memorialize the bank's addition to the policy, Assurance sent Old Second a document entitled "Evidence of Property Insurance," which stated that the identified insurance "has been issued, is in force, and conveys all the rights and privileges afforded under the policy," "and is subject to the premiums, forms and rules in effect for each policy period." The document further provided that Old Second would be given 30 days' notice in the event of the policy's termination and would be informed of any changes to the policy that would affect its interest.

¶ 5    Brothers and Gourmet Concepts maintained that they had expressly informed Assurance and its employees that Brothers was required, as a condition of its existing mortgage, to maintain insurance on the building to cover property damage. It was undisputed that neither Brothers nor Old Second ever saw or approved the application for coverage submitted by Assurance on their behalf. However, there was testimony by Robert Kennedy, a senior vice president at Old Second and the loan officer for the Brothers' account, that he had inspected the building in August of 2007, and he was aware that it was vacant and that no business was being conducted there.

¶ 6    Similarly, Peerless maintained that it was never notified that the building was vacant and had remained vacant since 2005. According to the testimony of Julie Brown, the primary underwriter for Peerless, she had never inspected the property prior to preparing the initial policy because she had relied upon Coleman's representation in the application that the building was 100% owner-occupied.

¶ 7    With regard to coverage for a physical loss of, or damage to, property, both the initial and renewal policies issued by Peerless provided as follows:

"E. Property Loss Conditions.

* * *

9. Vacancy.

a. Description of Terms.

(1) As used in this Vacancy Condition, the term building and the term vacant have the meanings set forth in Paragraphs (a) and (b) below:

* * *

(b) When this policy is issued to the owner or general lessee of a building, building means the entire building. Such building is vacant unless at least 31% of its total square footage is:

(i) Rented to a lessee or sub-lessee and used by the lessee or sublessee to conduct its customary operations; and/or

(ii) Used by the building owner to conduct customary operations.

* * *

b. Vacancy Provisions

If the building where loss or damage occurs has been vacant for more than 60 consecutive days before that loss or damage occurs:

(1) We will not pay for any loss or damage caused by any of the following even if they are Covered Causes of Loss:

(a) Vandalism;

- 3 -

* * *

(e) Theft; or

(f) Attempted Theft."

¶ 8    Both the initial and renewal policies contained the following provisions regarding mortgagees:

"F. Property General Conditions

* * *

(2) Mortgageholders

* * *

d. If we deny your claim because of your acts or because you have failed *to comply with the terms of this policy*, the mortgageholder will still have the right to receive loss payment if the mortgageholder:

(1) Pays any premium due under this policy at our request if you have failed to do so;

(2) Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and

(3) Has notified us of any change in ownership, occupancy or substantial change in risk known to the mortgageholder.

All of the terms of this policy will then apply directly to the mortgageholder." (Emphasis added.)

¶ 9    On December 8, 2009, vandals broke into the building, severely damaging the structure and stealing copper pipes, wiring, fixtures and other equipment. The loss totaled approximately $2.27 million. By June of 2010, both Brothers and Old Second had provided Peerless with notice of the loss. On July 15, 2010, Peerless informed the parties that it had determined that the building had been "vacant" since 2005 and denied coverage based upon the vacancy provision in its policy.

¶ 10    Thereafter, Old Second, Brothers, Gourmet Concepts, and Arthur Follenweider commenced the instant action against a number of defendants, including Peerless, Indiana Insurance Company (Indiana), and Assurance. In counts I and II of the complaint, which are the subject of this appeal, Old Second sought damages from Peerless and Indiana on theories of breach of contract and estoppel. However, Indiana was later dismissed from the action on motion and is not a party to this appeal.

¶ 11    Old Second filed a motion for summary judgment on counts I and II, arguing, *inter alia*, that, notwithstanding Peerless's denial of coverage to Brothers by reason of the building's vacancy for more than 60 days prior to the date of loss, it was nonetheless entitled to coverage under the policy's mortgage clause because the building's vacancy was the result of the acts of Brothers. Alternatively, Old Second argued that Peerless should be equitably estopped to deny coverage based upon the representations contained in the "Evidence of Property Insurance certificate."

¶ 12    In response to the motion, Peerless argued that, regardless of the mortgage clause, the language of the policy unambiguously states that no coverage exists for loss or damage caused by theft or vandalism when the property has been vacant for more than 60 days prior to the loss. According to Peerless, in order for the mortgage clause to be applicable, Old Second first

- 4 -

bore the burden of establishing a covered loss and, as the loss at issue was excluded from coverage under the vacancy provisions of the policy, protection under the mortgage clause was never triggered.

¶ 13        On March 7, 2013, the circuit court granted summary judgment in favor of Old Second on counts I and II, concluding that, as a matter of law, Old Second was entitled to coverage under the mortgage clause. The court entered judgment against Peerless in the amount of $1,455,697.92. On May 31, 2013, the court denied Peerless's motion to reconsider, but reduced the judgment by the amount paid by Brothers to Old Second toward the original debt. On July 23, 2013, the court again modified its judgment order, reducing Old Second's judgment against Peerless to $816,833.13.

¶ 14        Thereafter, the circuit court granted summary judgment for Peerless on all claims asserted by Brothers, finding it was undisputed that the loss was occasioned by theft and vandalism and that the property had been vacant in excess of 60 consecutive days prior to the loss. The court rejected Brothers' contention that Peerless made any misrepresentations with regard to coverage or that Peerless had any knowledge of the vacancy.

¶ 15        On December 16, 2013, the court entered judgment on a jury verdict in favor of Brothers and Gourmet Concepts, and against Assurance, Coleman, and another Assurance employee, in the amount of $2,272,168.34.

¶ 16        On January 30, 2014, the circuit court awarded Old Second prejudgment interest pursuant to the Illinois Interest Act (Interest Act) (815 ILCS 205/0.01 *et seq.* (West 1012)), from July 15, 2010, the date Peerless denied coverage, until December 16, 2013. On May 15, 2014, the circuit court entered an order denying all of the pending posttrial motions and modifying the award of prejudgment interest in favor of Old Second to run from July 15, 2010, until July 23, 2013. The order of May 15, 2014, terminated the litigation. Peerless now appeals from the orders of March 7, 2013, May 31, 2013, January 30, 2014, and May 15, 2014.

¶ 17        In urging reversal of the summary judgment entered in favor of Old Second on March 7, 2013, and the denial of its motion to reconsider on May 31, 2013, Peerless argues that the circuit court erred in its interpretation of the insurance policy by allowing coverage to Old Second under the mortgage clause when the loss at issue, which Peerless defines as theft from and vandalism to a building that had been vacant in excess of 60 days, was not covered in the first instance. For the reasons which follow, we reject the argument.

¶ 18        Summary judgment is an appropriate means to dispose of an action where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2-1005 (West 2012); *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 102 (1992). The construction of an insurance contract and a determination of the parties' rights thereunder are questions of law, which are appropriate for disposition by summary judgment. *Crum & Forster Managers Corp. v. Resolution Trust Corp.*, 156 Ill. 2d 384, 391 (1993); *Outboard Marine*, 154 Ill. 2d at 102. On appeal from the grant of summary judgment, this court's function is to determine whether the circuit court correctly found that no genuine issue of material fact existed and that judgment for the moving party was proper as a matter of law. *Makowski v. City of Naperville*, 249 Ill. App. 3d 110, 115 (1993). Our review is *de novo. Outboard Marine Corp.*, 154 Ill. 2d at 102.

¶ 19        In construing an insurance policy, our primary function is to ascertain and enforce the intent of the parties as expressed by the written language in the agreement. *Crum & Forster*, 156 Ill. 2d at 391. In order to determine the parties' intent based upon the language used, we

construe the policy as a whole, taking into account the type of insurance for which the parties have contracted, the risks undertaken and purchased, the subject matter that is insured and the purposes of the entire contract. *Id*. If the words in the policy are unambiguous, we afford them their plain, ordinary meaning and apply them as written. This court will not search for ambiguity where none exists. *Id.* Further, we will not interpret an insurance policy in such a way that any of its terms are rendered meaningless or superfluous. *Pekin Insurance Co. v. Wilson*, 237 Ill. 2d 446, 466 (2010).

¶ 20    There are two types of well-recognized mortgage clauses contained in property insurance policies; namely, "simple" or ordinary, and "standard." The "simple" mortgage clause makes the mortgagee merely an appointee who will receive insurance proceeds only to the extent of its interest as stated in the policy, subject to all of the same defenses to coverage as the insured. In such a circumstance, the mortgagee possesses no greater right of recovery than the insured. *Wells Fargo Bank, NA v. Null*, 847 N.W.2d 657, 669 (Mich. Ct. App. 2014); *Progressive American Insurance Co. v. Florida Bank at Daytona Beach*, 452 So. 2d 42, 44 (Fla. Dist. Ct. App. 1984). The "standard" mortgage clause, more broadly, forms a separate and distinct contract between the insurer and the mortgagee, the effect of which is to shield the mortgagee from being denied coverage based upon the acts or omissions of the insured or the insured's noncompliance with the terms of the policy. See *West Bend Mutual Insurance Co. v. Salemi*, 158 Ill. App. 3d 241 (1987); *City of Chicago v. Maynur*, 28 Ill. App. 3d 751, 754 (1975); *Sagar Megh Corp. v. United National Insurance Co*., 999 F. Supp. 2d 1018, 1026 (N.D. Ill. 2013); *Wells Fargo*, 847 N.W.2d at 670; *Commerce Bank v. West Bend Mutual Insurance Co*., 853 N.W.2d 836, 840 (Minn. Ct. App. 2014), *review granted*, No. A14-0247 (Dec. 16, 2014); *Aetna State Bank v. Maryland Casualty Co.*, 345 F. Supp. 903, 905 (N.D. Ill. 1972); 4 Steven Plitt *et al.*, Couch on Insurance 3d § 65:9 (2011). Under the "standard" mortgage clause, the terms and conditions of the insurance policy are deemed to apply equally to the loss payee and the insured, but the loss payee is liable only for its own breaches. *Commerce Bank*, 853 N.W.2d at 840 (citing *Bast v. Capitol Indemnity Corp*., 562 N.W.2d 24, 27 (Minn. Ct. App. 1997)). A central purpose behind the clause is to protect the mortgagee from the whims of the debtor (see 5A John A. Appleman & Jean Appleman, Insurance Law and Practice § 3401 (1970); *Valley National Bank of Arizona v. Insurance Co. of North America*, 836 P.2d 425, 428 (Ariz. Ct. App. 1992)), and is rooted in a recognition that the mortgagee typically "has no control over a mortgagor's representations and no knowledge or means of knowledge of facts upon which the mortgagor's representations are based" (*LaSalle National Bank v. Federal Emergency Management Agent*, No. 84 C 9066, 1985 WL 2081, at *4 (N.D. Ill. July 26, 1985) (citing *Union Trust Co. v. Philadelphia Fire & Marine Insurance Co.*, 145 A. 243 (Me. 1929))).

¶ 21    In this case, Peerless's mortgage clause states that "if we deny your claim *because of your acts or because you have failed to comply with the terms of this policy*, the mortgageholder will still have the right to receive loss payment" upon the mortgageholder's satisfaction of certain enumerated conditions. (Emphasis added.) Peerless does not dispute that this phraseology constitutes a "standard" mortgage clause, or that Old Second complied with the enumerated conditions under the policy. Rather, Peerless asserts that it was within its rights to define the scope of the risk that it assumed, and that vacant buildings, notoriously subject to increased exposure to vandalism and theft, were expressly excluded from that risk under the terms of its policy. Further, it contends that the fact that the building was allowed to remain vacant for 60

days was not an "act" or default of the insured, but merely amounted to an unacceptable condition of risk. While we agree that Peerless was free to set the limits of its liability under the policy, we disagree with its remaining contentions.

¶ 22     Initially, we point out that Peerless is incorrect in its assignment of the burden of proof. We agree that, in Illinois, the initial burden of proof lies with an insured to prove that its asserted loss was a covered loss under the terms of the insurance policy. *Hays v. Country Mutual Insurance Co.*, 28 Ill. 2d 601, 605-06 (1963); *Watkins v. American Service Insurance Co.*, 260 Ill. App. 3d 1054, 1061-62 (1994). However, the insurer bears the burden of establishing that a claim falls within a provision of the policy that limits or excludes coverage. *Farmers Automobile Insurance Ass'n v. Gitelson*, 344 Ill. App. 3d 888, 896 (2003).

¶ 23     There is no dispute, nor can there be, that the claimed loss in this case was for damage resulting from vandalism to, and theft from, the building, and that both of these are covered losses under the terms of Peerless's policy. Although the policy articulates specific "exclusions" "limitations," and "property not covered," none of these sections contain any reference to vacant property.

¶ 24     As stated earlier, the definition of vacancy contained in Peerless's policy states that the covered building is vacant "unless at least 31% of its total square footage" is either rented to and occupied by a lessee or used by the building owner to conduct customary operations. This definition is followed by the policy's "vacancy provisions," stating that if the building "where the loss or damage occurs" has been vacant for more than 60 consecutive days prior to the loss, Peerless "will not pay for any loss or damage" caused by, *inter alia*, vandalism or theft, "even if they are Covered Causes of Loss."

¶ 25     In considering the interplay between the vacancy provision and the mortgage clause, we find no Illinois cases on point, so we look to decisions from other jurisdictions. The circuit court relied upon the cases of *Murray v. North Country Insurance Co.*, 716 N.Y.S.2d 820 (N.Y. App. Div. 2000), and *First American Savings F.A. v. Newark Insurance Co.*, No. 89-6425, 1990 WL 121224, at *2 (E.D. Pa. Aug. 13, 1990), both of which contained a mortgage clause and vacancy provision essentially identical to those in this case, and both of which held that, as a matter of law, the vacancy clause did not relieve the insurer of responsibility to cover the mortgagee, as long as the mortgagee met its responsibilities under the policy. See *Newark Insurance*, 1990 WL 121224, at *2 (citing cases). Indeed, this appears to be the majority view in similar cases, based upon a recognition that it was the act or noncompliance of the insured, by allowing the property to remain vacant for more than 60 days prior to the loss, that defeated coverage. These courts reason that, to best effectuate the language and purpose underlying the standard mortgage clause, the mortgagee must not be refused coverage as long as the loss did not result from its own breach of the policy. See *SWE Homes, LP v. Wellington Insurance Co.*, 436 S.W.3d 86 (Tex. Ct. App. 2014); *Commerce Bank*, 853 N.W.2d 836; but see *Waterstone Bank, SSB v. American Family Mutual Insurance Co.*, 2013 WI App 60, 348 Wis. 2d 213, 832 N.W.2d 152; *Potomac Insurance Co. of Illinois v. NCUA*, No. 96 C 1044, 1996 WL 396100 (N.D. Ill. July 12, 1996).

¶ 26     We conclude that the sounder analysis lies in the reasoning of those cases requiring coverage for the mortgagee under a "standard" mortgage clause. In this case, there is nothing in Peerless's policy barring coverage for vandalism to, or theft from, a vacant building *per se*, as long as that vacancy does not exist continuously for a period of more than 60 days prior to a

loss. It was the fact that the building remained vacant for over 60 consecutive days before the loss that triggered the application of the vacancy provision.

¶ 27 Relying on *Waterstone Bank*, 2013 WI App 60, ¶¶ 9-10, 348 Wis. 2d 213, 832 N.W.3d 152, Peerless argues that the building's vacancy was not attributable to any act, breach or default on the part of Brothers; instead, vacancy of the building for a period in excess of 60 days prior to the loss gave rise to a "state of noncoverage" based upon a condition of the building independent of any acts of the insured. However, harmonizing the vacancy provision with the mortgage clause, as we must, we find Peerless's interpretation unreasonable, as it would place a mortgagee in the untenable position of having to guarantee the regular occupation of the premises, effectively placing it "at the whim" of the insured.

¶ 28 It has been held that a vacancy provision identical to that in this case is a "condition subsequent" to coverage rather than a condition precedent to, or an exclusion from, coverage. *D&S Realty, Inc. v. Markel Insurance Co.*, 789 N.W.2d 1 (Neb. 2010). While conditions precedent concern the very attachment of risk in the first instance, a condition subsequent applies to conditions which "must be maintained or met" after the risk has attached in order that the policy remain in full force and effect. *Id.* at 10. The happening of an event which relieves an insurer from liability under a policy is a condition subsequent. See *id.* at 10 nn. 9-12 (citing 6 Lee R. Russ & Thomas F. Segalla, Couch on Insurance 3d § 81:19, at 81-34 to 81-35 (2006)).

¶ 29 Similarly, the vacancy provision in Peerless's policy does not exclude coverage for a loss occurring when the covered premises are vacant, but rather relieves Peerless of the obligation to pay the named insured for certain enumerated covered losses if the building remained vacant for more than 60 consecutive days prior to the loss. As such, occupancy of the building during the 60 days prior to a loss is a condition subsequent which must be complied with in order to entitle the named insured to payment in the event of certain enumerated covered losses.

¶ 30 It was the act of Brothers in failing to occupy 31% of the building's square footage or to cause the same area of the building to be occupied by a tenant for the 60-day period prior to the subject loss that triggered the policy's vacancy provisions, thereby relieving Peerless of the obligation to pay Brothers for otherwise covered losses. By its very terms, however, the mortgage clause provides that Peerless was nonetheless obligated to pay the mortgageholder, Old Second, as Brothers' claim was denied because of its own act. The only requirements placed upon Old Second under the mortgage clause were that it: (1) pay any premiums due under the policy at Peerless's request, and there is no evidence that any such premiums were either due or requested; (2) submit a signed, sworn proof of loss within 60 days after receiving notice from Peerless of its failure to do so, and the record reflects that Old Second did submit a proper proof of loss; and (3) notify Peerless of any change in ownership, occupancy or substantial change in risk known to it. As to the third requirement, it is undisputed that Brothers was at all times the owner of the building and that there was no change in occupancy, as the building was vacant throughout the entire term of the subject policy. Finally, Peerless has made no assertion that Old Second failed to notify it of any other substantial change in risk known to Old Second.

¶ 31 We note that Peerless has made no argument in its opening brief before this court that the circuit court erred in entering a summary judgment in favor of Old Second because a genuine issue of fact existed as to the amount that Old Second was due as a result of the loss.

Consequently, the issue has been forfeited pursuant to the provisions of Illinois Supreme Court Rule 341(h)(7) (eff. Sept. 1, 2006).

¶ 32 Based upon the foregoing analysis and the fact that there is no evidence in the record that Old Second breached, or failed to comply with, any of the terms of the policy, we conclude that Old Second was entitled to judgment as a matter of law and the circuit court correctly entered summary judgment in its favor on March 7, 2013. It follows, therefore, that we also find no abuse of discretion in the circuit court's denial of Peerless's motion for reconsideration on May 31, 2013.

¶ 33 In light of our determination that Old Second is entitled to coverage under the terms of the policy and that Peerless breached the policy by denying coverage, we need not reach Peerless's next contention, that Old Second failed to establish that it should be estopped to deny coverage by reason of the issuance of the "Evidence of Property Insurance certificate."

¶ 34 Next, Peerless argues that the circuit court abused its discretion in awarding interest to Old Second. Its first argument in this regard is premised upon the proposition that the circuit court erred in granting summary judgment in favor of Old Second. Having rejected its argument attacking the summary judgment, we also reject Peerless's first argument addressed to the circuit court's award of prejudgment interest. We next address Peerless's alternative arguments directed to the interest award.

¶ 35 Peerless's second argument addressed to the circuit court's award of prejudgment interest appears to be based upon the contention that it is Brothers who should be held liable for any interest owed to Old Second. Peerless asserts that the amount awarded as prejudgment interest under the Interest Act somehow is tied to Brothers' underlying debt to Old Second, and thus should be paid by Brothers rather than Peerless. Peerless cites no authority for its argument in this regard, and it is therefore forfeited under Rule 341(h)(7). *Sekerez v. Rush University Medical Center*, 2011 IL App (1st) 090889, ¶¶ 80-82 (failure to cite legal authority in violation of Rule 341(h)(7) results in forfeiture of the issue).

¶ 36 Peerless next argues that the circuit court erred by fixing July 15, 2010, the date coverage under the mortgage clause was denied, as the commencement date for the accrual of prejudgment interest owed to Old Second. Peerless contends that no money became due to Old Second until December 16, 2013, the date upon which the circuit court entered a "final" judgment on the jury's verdict resolving the remaining claims of Brothers and Gourmet Concepts. In support of its arguments in this regard, Peerless references that portion of its policy which states that it will pay a covered loss within 30 days after receiving a sworn proof of loss, provided all of the terms of the policy have been complied with and an agreement as to the amount of the loss has been reached or an appraisal award has been made. It contends that, since no agreement was ever reached as to the amount of the loss, no money was ever due Old Second until the trial court's entry of its "final" judgment on December 16, 2013. We reject the argument for several reasons.

¶ 37 First, we agree with Old Second that Peerless's argument based upon the loss-payment provision of the policy has been forfeited because Peerless failed to raise it before the trial court. *Mabry v. Boler*, 2012 IL App (1st) 111464. Forfeiture aside, we reject the argument on the merits.

¶ 38 Section 2 of the Interest Act permits an award of prejudgment interest at the rate of five percent per year "for all moneys after they become due on any bond, bill, promissory note, or other instrument of writing." 815 ILCS 205/2 (West 2012). An insurance policy is an

"instrument of writing" within the meaning of the statute, and as a consequence, interest may be recovered from the insurer from the time money becomes due under a policy. *Central National Chicago Corp. v. Lumbermens Mutual Casualty Co.*, 45 Ill. App. 3d 401, 408 (1977). If the amount due is determinable, interest can be awarded pursuant to the statute even when liability and the amount due require legal ascertainment. *New Hampshire Insurance Co. v. Hanover Insurance Co.*, 296 Ill. App. 3d 701, 709 (1998); see also *Bank of Chicago v. Park National Bank*, 277 Ill. App. 3d 167, 173 (1995). The existence of a good-faith defense to coverage does not preclude an award of interest. *New Hampshire Insurance Co.*, 296 Ill. App. 3d at 709; see also *Martin v. Orvis Brothers & Co.*, 25 Ill. App. 3d 238, 251 (1974).

¶ 39    Peerless has made no argument in its opening brief before this court that the amount due Old Second was not easily computed. Therefore, the issue has been forfeited pursuant to the provisions of Supreme Court Rule 341(h)(7) as a basis for disturbing the circuit court's award of prejudgment interest.

¶ 40    Peerless' policy provides that it will pay a covered loss within 30 days of its submission of a sworn proof of loss, provided that the loss payee has complied with all of the terms of the policy. In this case, Old Second submitted its proof of loss on June 25, 2010, and there is no evidence in the record that it failed to comply with any of the terms of the policy. The policy provision conditioning Peerless's obligation to pay on an agreement as to the amount of the loss or an appraisal award has no relevance to the issue of when the moneys owed to Old Second became due, as Peerless completely denied coverage. When an insurance carrier breaches its policy by denying coverage, the amount due under the policy is payable within the time fixed after tender of the proof of loss and will bear interest from that date. *DiLeo v. United States Fidelity & Guaranty Co.*, 109 Ill. App. 2d 28, 44-45 (1969); see also *Schulze & Burch Biscuit Co. v. American Protection Insurance Co.*, 96 Ill. App. 3d 350, 352-53 (1981). In this case, the amount due Old Second became due pursuant to the terms of Peerless's policy on July 25, 2010, 30 days after Old Second submitted its sworn proof of loss.

¶ 41    Peerless also argues that no money became due to Old Second until the trial court entered its final judgment on December 16, 2013, and as a consequence, any allowance of interest prior to that date is in "direct conflict with the Policy [and] the interest Statute." Unfortunately, any argument that Peerless has, or may have had, addressing the proper commencement date for the accrual of prejudgment interest in this case fails under the doctrine of invited error. In its response to Old Second's motion for prejudgment interest, Peerless made the following assertion: "In the event that this Court does decide to award Old Second prejudgment interest, the start date for the accrual of such interest would be July, 15, 2010." Illinois has long subscribed to the proposition that a party cannot claim as error that which it has induced. Under the doctrine of invited error, a party may not request or induce the trial court to proceed in one manner and later contend on appeal that the course of action was in error. *In re Detention of Swope*, 213 Ill. 2d 210, 217 (2004); *Morris v. Banterra Bank*, 159 Ill. 2d 551, 552 (1994). We, therefore, reject Peerless's argument that the circuit court abused its discretion by fixing July 15, 2010, as the commencement date for the accrual of prejudgment interest.

¶ 42    For its final argument, Peerless asserts that "post-judgment interest would not begin to accrue until December 16, 2013." Initially, we observe that the circuit court entered no order awarding postjudgment interest in this case, and we do not issue advisory opinions to guide future litigation. *Golden Rule Insurance Co. v. Schwartz*, 203 Ill. 2d 456, 469 (2003). That is not to say, however, that the commencement date for the accrual of postjudgment interest and

the termination date of an award of prejudgment interest are unrelated. Although we address Peerless's argument in this regard in terms of the propriety of the circuit court's having fixed July 23, 2014, as the date for the termination of its award of prejudgment interest, our resolution of the issue rests heavily on the proper commencement date for the accrual of postjudgment interest.

¶ 43     As our supreme court has held, the assessment of interest is "neither a penalty nor a bonus, but instead a preservation of the economic value of an award from diminution caused by delay." *Illinois State Toll Highway Authority v. Heritage Standard Bank & Trust Co.*, 157 Ill. 2d 282, 301 (1993). It follows then that when, as in this case, a plaintiff is entitled to both prejudgment and postjudgment interest on the same award, the beginning date for the accrual of postjudgment interest marks the ending date for the accrual of prejudgment interest.

¶ 44     As noted earlier, on January 30, 2014, the circuit court awarded Old Second prejudgment interest pursuant to the Act from, July 15, 2010, until the December 16, 2013. On May 15, 2014, however, the circuit court modified the award of prejudgment interest to run from July 15, 2010, until July 23, 2013. Peerless seems to argue that the circuit court abused its discretion by ending the term of prejudgment interest, and by implication, commencing the accrual of postjudgment interest, on July 23, 2013, rather than December 16, 2013, the date upon which the circuit court entered judgment on the claims remaining in the litigation. The flaw in Peerless's reasoning is that it appears to fix the date for the commencement of the accrual of postjudgment interest as the date that the judgment upon which the interest is based became enforceable.

¶ 45     Section 2 of the Interest Act speaks only to the point at which prejudgment interest at the rate of 5% per annum begins accruing. The statute makes no provision for the termination date of an award of prejudgment interest. The relevant provisions of section 2-1303 of the Code of Civil Procedure (Code) state that interest at the rate of 9% per annum commences to run on a judgment entered upon any award, report or verdict from the date when the award, report or verdict is made or rendered. 735 ILCS 5/2-1303 (West 2012). The trial court lacks discretion to deny postjudgment interest under this section, because the imposition of such interest is mandatory. *Certain Underwriters at Lloyd's, London v. Abbott Laboratories*, 2014 IL App (1st) 132020, ¶¶ 61-64.

¶ 46     Within the meaning of section 2-1303, "awards, reports, and verdicts are liquidated sums representing adjudications of disputed facts and issues upon which judgment must be entered before the award, report, or verdict can be enforced or appealed through the judicial process." *Illinois State Toll*, 157 Ill. 2d at 301. Interest assessed as a result of a judgment entered upon any such award begins to accrue on the date the award is made, without regard to the fact that the award may not be either enforceable or appealable when made. *Id.* In this case, the circuit court's order of July 23, 2013, which fixed the sums due by Peerless to Old Second, constituted an "award" within the meaning of section 2-1303 of the Code, and accordingly, July 23, 2013, is the date upon which postjudgment interest commenced to accrue. See *Certain Underwriters at Lloyd's*, 2014 IL App (1st) 132020, ¶ 64; *Andrews v. Kowa Printing Corp.*, 351 Ill. App. 3d 668 (2004).

¶ 47     Finding, as we have, that July 23, 2013, is the date upon which postjudgment interest commenced to accrue in this case, we also conclude that July 23, 2013, is also the appropriate date for the termination of prejudgment interest. We, therefore, find no abuse of discretion in

the entry of the circuit court's order of May 15, 2014, which modified Old Second's award of prejudgment interest to run from July 15, 2010, until July 23, 2013.

¶ 48    In summary, we: affirm the circuit court's order of March 7, 2013, which granted summary judgment in favor of Old Second; affirm the order of May 31, 2013, denying Peerless's motion for reconsideration; affirm the order of January 30 2014, to the extent that it awarded Old Second prejudgment interest commencing on July 15, 2010; and affirm that portion of the order of May 15, 2014, which modified the award of prejudgment interest in favor of Old Second to run from July 15, 2010, until July 23, 2013.

¶ 49    Affirmed.