# Illinois Official Reports

## Appellate Court

---

### *State Farm Fire & Casualty Co. v. Dubrovsky*, 2018 IL App (1st) 170282

---

| | |
|---|---|
| Appellate Court Caption | STATE FARM FIRE & CASUALTY COMPANY, Plaintiff-Appellant and Counterdefendant-Appellant, v. PAUL DUBROVSKY; JEFF DUBROVSKY; and SETERUS, INC., f/k/a IBM Lender Business Processes, Inc. Services, Defendants (Paul Dubrovsky and Jeff Dubrovsky, Defendants-Appellants; Seterus, Inc., Defendant-Appellee and Counterplaintiff-Appellee). |
| District & No. | First District, First Division<br>Docket No. 1-17-0282 |
| Filed | March 30, 2018 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 13-CH-4880; the Hon. Rita Novak and the Hon. Sanjay Tailor, Judges, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Daniel J. Nolan and Elizabeth M. Bartolucci, of O'Hagan Meyer LLC, of Chicago, for appellant State Farm Fire & Casualty Co.<br><br>Fedor Kozlov, of Schaumburg, for other appellants.<br><br>Ralph T. Wutscher, Ernest P. Wagner, and Coleman J. Braun, of Maurice Wutscher LLP, of Chicago, for appellee. |

JUSTICE MIKVA delivered the judgment of the court, with opinion. Presiding Justice Pierce and Justice Simon concurred in the judgment and opinion.

**OPINION**

¶ 1 Plaintiff State Farm Fire & Casualty Company (State Farm) filed this action against defendants Seterus, Inc. (Seterus), Paul Dubrovsky, and Jeff Dubrovsky, seeking a declaration that it owed no coverage under a homeowner's insurance policy issued to Jeff Dubrovsky for a certain property owned by Paul Dubrovsky, subject to a mortgage executed by Paul Dubrovsky, and currently serviced by Seterus as the mortgagee. The circuit court granted summary judgment in favor of Seterus, finding that the policy's standard mortgage clause created a separate and distinct contract, under which Seterus was entitled to coverage. The circuit court also granted summary judgment to Seterus as to the distribution of the insurance proceeds. For the following reasons, we affirm.

¶ 2                      I. BACKGROUND
¶ 3                      A. The Parties
¶ 4 Paul Dubrovsky purchased a residential property at 1826 Park Avenue in North Chicago, Illinois (the Property), and executed a mortgage on the Property in 2007. Jeff Dubrovsky is Paul's father and the named insured on the insurance policy, which was issued by State Farm. Seterus is the current mortgagee of the mortgage and loan issued to Paul and secured by the Property.

¶ 5                      B. The Policy
¶ 6 The relevant policy provision states as follows:
   "10. Mortgage Clause. The word 'mortgagee' includes trustee.

   a. If a mortgagee is named in this policy, any loss payable under Coverage A shall be paid to the mortgagee and you, as interests appear. If more than one mortgagee is named, the order of payment shall be the same as the order of precedence in the mortgages.

   b. If we deny your claim that denial shall not apply to a valid claim of the mortgagee, if the mortgagee:

      (1) notifies us of any change in ownership, occupancy, or substantial change in the risk of which the mortgagee is aware;

      (2) pays on demand any premium due under this policy, if you have not paid the premium; and

      (3) submits a signed, sworn statement of loss within 60 days after receiving notice from us of your failure to do so. Policy conditions relating to Appraisal, Suit Against Us and Loss Payment apply to the mortgagee.
   ***
   d. If we pay the mortgagee for any loss and deny payment to you:

- 2 -

(1) we are subrogated to all the rights of the mortgagee granted under the mortgage on the property; or

(2) at our option, we may pay to the mortgagee the whole principal on the mortgage plus any accrued interest. In this event, we shall receive a full assignment and transfer of the mortgage and all securities held as collateral to the mortgage debt.

e. Subrogation shall not impair the right of the mortgagee to recover the full amount of the mortgagee's claim."

¶ 7                                    C. The Present Action

¶ 8        State Farm filed its complaint against the Dubrovskys and Seterus on February 19, 2013. This case was resolved on cross-motions for summary judgment. The following facts were undisputed on summary judgment, except where noted.

¶ 9        Paul purchased and executed a mortgage on the Property on August 21, 2007. Paul had, in the past, obtained an insurance policy for the Property through Country Mutual Insurance Company (Country Mutual). Country Mutual insured Paul from August 2007 through September 2009. But, according to State Farm, Paul "submitted multiple claims with Country Mutual" during that time period, and Country Mutual ultimately either "non-renewed or cancelled the policy."

¶ 10       On September 9, 2009, Jeff, Paul's father, applied for a homeowner's insurance policy with State Farm for the Property. State Farm alleged that, as a part of the application, Jeff provided the Property address as his own. Jeff admitted this in his answer, but the application itself does not appear in the record. That same day, State Farm issued Jeff the homeowner's policy at issue in this case for the Property.

¶ 11       It was undisputed that Jeff did not have a mortgage on the Property. There were disputed issues on summary judgment as to whether Jeff had a lease for the Property or had given money to Paul to assist with the down payment and, thus, whether Jeff had an insurable interest in the Property. State Farm presented evidence that it took a statement from Jeff, in November 2012, during which Jeff said that he had lived in Wheeling, Illinois, since 1997; he did not own the Property; and that his son, Paul, owned the Property. State Farm also presented evidence that Paul filed a Chapter 7 individual bankruptcy in the United States Bankruptcy Court for the Northern District of Illinois, in which Paul listed the Property as his own, listed Seterus as being the holder of the first mortgage with a secured claim of $237,603, and did not identify anyone else having an interest in the Property.

¶ 12       On August 27, 2012, Jeff filed two claims: one for an incident of vandalism on August 24, 2012, and one for a fire that occurred on the first floor of the Property on August 25, 2012. On September 17, 2012, State Farm sent a reservation of rights letter to Jeff, via his attorney, stating that it intended to investigate certain coverage questions, including whether Jeff, as the insured, had an insurable interest in the Property. Then, on September 24, 2012, State Farm received a letter from Seterus notifying it that Seterus was the successor mortgage holder on the Property and that the Property might be vacant.

¶ 13       On October 23, 2012, State Farm notified Jeff that it was canceling his insurance policy effective December 4, 2012, and returned to him $855.68 in unearned premiums. In the notice,

State Farm indicated it was canceling the policy "because of a material increase in hazard as evidenced by the fact that the residence is not owner occupied as required by [the] policy."

¶ 14 Before the cancelation was effective, on November 12, 2012, Jeff filed another claim with State Farm regarding a November 6, 2012, fire that occurred on the Property's second floor. State Farm sent another reservation of rights letter to Jeff, via his attorney, indicating its intent to investigate certain coverage questions relating to that claim.

¶ 15 In its complaint, State Farm asserted six bases for denying coverage under the policy as to either Seterus or the Dubrovskys, including that (1) the policy was void from its inception because Jeff never had an insurable interest in the Property; (2) Seterus had no mortgage, note, or loan with Jeff secured by the Property at any time; (3) the Property was not a residence premises as required for coverage under the policy; and (4) Jeff had failed to comply with the "Duties After Loss" section of the policy by not submitting certain requested records, documents, and information to State Farm with respect to each of the three claims.

¶ 16 In its affirmative defenses and counterclaim, Seterus asserted that (1) State Farm should have been aware that Jeff did not reside at the Property and was therefore estopped from denying coverage; (2) Seterus was entitled to coverage under the policy's mortgage clause, even if Jeff was not entitled to coverage under the policy; (3) the fire damages claimed by Jeff were covered under the policy; and (4) State Farm was barred from any attempt to rescind the policy. Seterus sought declarations that, even if Jeff made misrepresentations in his policy application, State Farm's attempt to declare the policy void *ab initio* was invalid; State Farm could not rescind the policy and the policy was not void *ab initio*; and State Farm was liable to Seterus for the damages that occurred on the Property.

¶ 17 The Dubrovskys answered State Farm's complaint but did not file any affirmative defenses or counterclaims.

¶ 18 The parties filed cross-motions for summary judgment. The circuit court granted summary judgment in favor of Seterus on its request for a declaration that it was entitled to recover under the policy. The court denied State Farm's and Jeff's motions for summary judgment.

¶ 19 The circuit court explained its reasoning at some length, and the transcript of that ruling is contained in the record. The circuit court noted that if Jeff, as the only named insured, did not have any insurable interest in the property, the policy would be void and not just voidable. The circuit court's view was that a genuine issue of material fact existed as to whether Jeff had an insurable interest in the Property because, although there was no clear evidence that he was either a tenant or an owner, there was some evidence that he had a lease and that he had paid some part of the down payment. But the court determined that, ultimately, it did not matter whether Jeff had an insurable interest. The court concluded that Seterus was entitled to coverage under the policy regardless of Jeff's interest because the standard mortgage clause contained in the policy created a "separate and distinct" insurance contract between Seterus and State Farm that could not be invalidated by any acts or omissions of the named insured, Jeff.

¶ 20 State Farm filed a motion to reconsider the judgment, primarily arguing that the standard mortgage clause should not operate to protect the mortgagee when the mortgagor is not the named insured. After hearing argument from both sides, the circuit court denied the motion and reaffirmed its earlier ruling in favor of coverage for Seterus.

- 4 -

¶ 21      Seterus then filed a second motion for summary judgment seeking damages. Seterus asked for prejudgment interest starting—according to the terms of the policy—30 days after State Farm received a sworn proof of loss from Jeff, on March 10, 2013. With respect to the disbursement of the insurance proceeds, Seterus claimed that the policy incorporated the mortgage agreement and that under the mortgage agreement it was entitled to $92,521.72 in actual cash value, $128,551.01 in replacement cost value, $15,714.82 in prejudgment interest on the actual cash value, and $21,834.39 in prejudgment interest on the replacement cost value.

¶ 22      On December 7, 2016, the circuit court granted in part and denied in part Seterus's motion for summary judgment as to damages. No hearing transcript is included in the record on appeal. The written order on the motion, however, indicates that Seterus's motion was granted "as to the determination that the subject insurance policy incorporates the subject mortgage by reference and that the terms of the mortgage control the disbursement and application of the insurance proceeds." The court ordered that Seterus would receive the proceeds to be applied per the terms of the mortgage. The court found that the stipulated damages were $92,521.72 in actual cash value and $127,551.01 in replacement cost value "to be recovered per [the] terms of the policy." The court only allowed Seterus's request for prejudgment interest starting from August 4, 2016, the date the parties stipulated as to the damages, for a total of $1584.13 on the actual cash value and found there to be factual issues as to whether it was entitled to prejudgment interest for any earlier period.

¶ 23      On January 9, 2017, the circuit court granted State Farm's motion to reconsider in part the damages award, deciding that there were no issues of fact and that Seterus was not entitled to prejudgment interest any time prior to August 4, 2016. The court order of January 9, 2017, states that "there remain no outstanding factual disputes prior to any appeal."


¶ 24                              II. JURISDICTION

¶ 25      The circuit court ruled on State Farm's motion to modify judgment and to reconsider judgment as to prejudgment interest on January 9, 2017. The Dubrovskys timely filed a notice of appeal on February 2, 2017, and State Farm timely filed its notice of appeal, joining the Dubrovskys' appeal, on February 8, 2017. Seterus filed a notice of cross-appeal regarding prejudgment interest on February 16, 2017. But the issues raised in the cross-appeal have been resolved by the parties and the cross-appeal voluntarily withdrawn. This court has jurisdiction pursuant to Illinois Supreme Court Rules 301 and 303 governing appeals from final judgments entered by the circuit court in civil cases. Ill. S. Ct. R. 301 (eff. Feb. 1, 1994); R. 303 (eff. Jan. 1, 2015).


¶ 26                                III. ANALYSIS

¶ 27      State Farm's claim in this case was resolved on cross-motions for summary judgment. "Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Virginia Surety Co. v. Northern Insurance Co. of New York*, 224 Ill. 2d 550, 556 (2007). When parties file cross-motions for summary judgment, they agree that there are no issues of material fact and that the case disposition turns on the resolution of purely legal issues. *Founders Insurance Co. v. Munoz*, 237 Ill. 2d 424, 432 (2010). We review the circuit court's ruling on cross-motions for summary judgment *de novo*. *A.B.A.T.E. of Illinois, Inc. v. Quinn*, 2011 IL 110611, ¶ 22.

¶ 28    When interpreting the provisions of an insurance policy, the court's primary objective is "to ascertain and give effect to the intentions of the parties as expressed by the language of the policy." *Valley Forge Insurance Co. v. Swiderski Electronics, Inc.*, 223 Ill. 2d 352, 362 (2006). If the policy's language is unambiguous when given its plain and ordinary meaning, it must be applied as written. *Id.* at 363. Any ambiguous language in the policy will be construed against the insurer. *Id.*

¶ 29    We consider the arguments of State Farm and the Dubrovskys separately.

### A. State Farm's Arguments on Appeal

¶ 31    State Farm presents three reasons why this court should reverse the circuit court's grant of summary judgment in favor of Seterus: (1) the policy was void *ab initio* because Jeff, the only named insured, had no insurable interest in the Property, (2) Seterus did not have a mortgagor/mortgagee relationship with Jeff and therefore should not be protected by the mortgage clause in the insurance policy between Jeff and State Farm, and (3) Seterus was not entitled to coverage because certain conditions precedent to receiving coverage under the policy were not met.

¶ 32    Seterus responds that (1) the mortgage clause created an independent contract between Seterus and State Farm, providing coverage protection to Seterus even if the policy between Jeff and State Farm was void *ab initio*, (2) Seterus was protected by the policy's standard mortgage clause, regardless of whether any mortgage agreement existed between Jeff and Seterus, and (3) State Farm cannot exclude coverage to Seterus as the mortgagee based on the policy's alleged conditions precedent. As an alternative, Seterus also argues that, even if an insurable interest is required, State Farm is not entitled to summary judgment because Seterus presented some evidence that Jeff had an insurable interest in the property.

¶ 33    Before directly addressing the parties' arguments, we first discuss the mortgage provision at issue in this case—referred to as the standard mortgage clause—and the broad manner in which courts have interpreted such clauses in favor of protecting mortgagees.

### 1. Mortgage Clauses in Contracts of Insurance

¶ 35    The policy provision at issue in this case, the "Mortgage Clause," provides as follows: "If a mortgagee is named in this policy, any loss payable under Coverage A shall be paid to the mortgagee and you, as interests appear." The clause goes on to state, "If we deny your claim that denial shall not apply to a valid claim of the mortgagee," so long as the mortgagee completes certain requirements. This is what is referred to as a "standard mortgage clause."

¶ 36    In *Old Second National Bank v. Indiana Insurance Co.*, 2015 IL App (1st) 140265, ¶ 20, this court recently explained the difference between such a clause and a "simple," or ordinary, mortgage clause:

> "The 'simple' mortgage clause makes the mortgagee merely an appointee who will receive insurance proceeds only to the extent of its interest as stated in the policy, subject to all of the same defenses to coverage as the insured. In such a circumstance, the mortgagee possesses no greater right of recovery than the insured. [Citations.] The 'standard' mortgage clause, more broadly, forms a separate and distinct contract between the insurer and the mortgagee, the effect of which is to shield the mortgagee

from being denied coverage based upon the acts or omissions of the insured or the insured's noncompliance with the terms of the policy."

¶ 37    On appeal, the parties do not dispute that the clause at issue here was a standard mortgage clause or that Seterus was the named mortgagee under the policy. What State Farm and Seterus dispute is whether the mortgagee's rights under this policy can be impacted by the named insured's lack of an insurable interest, the named insured's lack of any relationship with the mortgagee, or the failure of conditions precedent for coverage. We address each argument in turn.

¶ 38                                    2. Insurable Interest

¶ 39    State Farm first argues that the policy in this case was void *ab initio* because Jeff never had an insurable interest in the Property. According to State Farm, when a policy is void from its inception, "*no party* may claim rights under it" (emphasis in original) (citing *Illinois State Bar Ass'n Mutual Insurance Co. v. Coregis Insurance Co.*, 355 Ill. App. 3d 156, 164 (2014)). Seterus, on the other hand, argues that its coverage under the insurance policy would not be invalidated even if Jeff lacked an insurable interest in the Property because the standard mortgage clause created a "separate and distinct contract" (emphasis omitted) between State Farm and Seterus.

¶ 40    Although it viewed the record as creating a question of fact as to whether Jeff had an insurable interest in the Property, the circuit court agreed with Seterus that this did not matter, as the standard mortgage clause covered Seterus regardless of Jeff's interest. In reaching this conclusion, the circuit court largely relied on *Wolfram Partnership, Ltd. v. LaSalle National Bank*, 328 Ill. App. 3d 207 (2001). In that case, the lessee of the subject building subleased the building to a corporate entity, and the owner of that company obtained insurance for the building in his individual capacity, naming the trustee-owner of the building as an additional insured. *Id.* at 211, 220. In determining that the lessee did not breach its lease agreement by failing to obtain insurance protecting the trust itself, the *Wolfram* court explained:

> "We find the question of whether [the named insured] possessed an insurable interest during the period in question is of no consequence in determining [the lessee's] compliance under [the lease] since the record unequivocally demonstrates that the trust's interests in the Premises have, at all relevant times, been adequately protected by [the named insured's] insurance. The Trust has been included as an additional insured under all policies of insurance obtained and in effect during the time period in question. Clearly, the Trust, as owner of the Premises and the structures thereupon, had an insurable interest under [the named insured's] policies.

> While a lack of insurable interest will ordinarily render a policy of insurance void and unenforceable on public policy grounds [citations], '[w]here there are several insureds under a policy, and all do not have the requisite insurable interest, the policy is invalid only as to those lacking [an] insurable interest.' " *Id.* at 220-21 (quoting 3 Couch on Insurance 3d § 41:2, at 41-8 (1995)).

¶ 41    We agree with the circuit court that, based on *Wolfram* and cases such as *Old Second* that recognize a standard mortgage clause creates a separate and distinct contract between the mortgagee and the insurer (*Old Second*, 2015 IL App (1st) 140265, ¶ 20), Jeff's possible lack of an insurable interest does not bar Seterus from coverage under the policy. This holding is consistent with the way most, if not all, other jurisdictions have interpreted standard mortgage

clauses. See, *e.g.*, *BankAmerica Housing Services v. Allstate Insurance Co.*, 771 So. 2d 1218, 1221 (Fla. Dist. Ct. App. 2000); *Norwest Mortgage, Inc. v. Nationwide Mutual Fire Insurance Co.*, 718 So. 2d 15, 17 (Ala. 1998); *Great American Insurance Co. of New York v. Southwestern Finance Co.*, 297 P.2d 403, 404-05 (Okla. 1956); see also 4 Couch on Insurance 3d § 65:50, at 65-97 (rev. ed. 2011) ("The mortgagee may *** recover for his or her loss from a collision although the policy was void as to the mortgagor ab initio for want of an insurable interest."). But see *id.* § 65:12, at 65-25 ("if the insured has no interest in the property, so that the policy is void as against public policy, his or her mortgagee acquires no rights against the insurer by reason of a loss-payable clause").

¶ 42    Therefore, State Farm cannot deny coverage to Seterus based upon the possibility that Jeff, as the named insured, did not have an insurable interest.


                        3. Mortgagee-Mortgagor Relationship

¶ 43

¶ 44    State Farm's second argument is that Seterus is not entitled to recover because there was no mortgagor-mortgagee relationship between Jeff and Seterus. State Farm argues that a mortgagor-mortgagee relationship by which the named insured agrees to carry insurance on behalf of the mortgagee "is what gives rise to the 'secondary' contractual relationship between a mortgagee and the insurer." In support of this argument, State Farm relies primarily on language from *Allen v. St. Paul Fire & Marine Insurance Co.*, 208 N.W. 816 (Minn. 1926), a case in which the Minnesota Supreme Court positively quoted language from an Eighth Circuit case concluding that " 'the effect of the [standard] mortgage clause, *when attached to a policy of insurance running to the mortgagor*, is to make a new and separate contract between the mortgagee and the insurance company.' " (Emphasis added.) *Id.* at 818 (quoting *Syndicate Insurance Co. v. Bohn*, 65 F. 165, 178 (8th Cir. 1894)).

¶ 45    In response, Seterus argues that the plain language of the standard mortgage clause in this case "does not impose any restrictions on the term 'mortgagee,' " does not require any specific relationship between a named insured and a named mortgagee, and "instead merely provides that '[i]f a mortgagee is named in this policy, any loss payable under Coverage A shall be paid to the mortgagee and [the insured].' " Seterus insists that the language State Farm relies on to argue to the contrary is "mere surplusage, as demonstrated by the abundance of modern case law that entirely omits th[at] language, or indeed, any reference to a requirement that the mortgagee be in privity with the insured to benefit under the policy."

¶ 46    The circuit court agreed with Seterus, noting that the language relied upon by State Farm—"when attached to a policy of insurance running to the mortgagor"—was "not essential" to the holdings in either *Allen* or *Bohn*. The court considered the language to be dicta and was not persuaded by it that an insurance policy must run to the mortgagor to entitle the mortgagee to protection under a standard mortgage clause.

¶ 47    We, again, agree with the circuit court that Jeff not being the mortgagor does not provide a basis for State Farm to deny coverage to Seterus.

¶ 48    We recognize that, as State Farm argues, the court's language in *Bohn* was quoted by some of the earlier cases that recognized that a standard mortgage clause creates a separate contract of insurance between the mortgagee and the insurer. See, *e.g.*, *Ohio Farmers' Insurance Co. v. Hull*, 186 N.E. 823, 824-25 (Ohio Ct. App. 1932); *National Union Fire Insurance Co. v. Short*, 32 F.2d 631, 632-33 (6th Cir. 1929); *Fayetteville Building & Loan Ass'n v. Mutual Fire Insurance Co. of West Virginia*, 141 S.E. 634, 635-36 (W. Va. 1928). However, this language

cannot support State Farm's "privity" argument—that a mortgagee's rights under the mortgage clause are dependent on the named insured being the mortgagor—for a number of reasons.

¶ 49    First, as the circuit court noted, it does appear that the language State Farm relies on in the *Bohn* case is not necessary to that court's analysis. There was no issue in *Bohn* or in the cases following *Bohn* as to whether the named insured was also the mortgagor. As is often the case, in those cases the named insured and the mortgagor were the same party, and the court's reference to the "mortgagor" could have been changed to refer to the "named insured" without a change in the court's reasoning.

¶ 50    Second, there is no language in the mortgage clause before us in this case or anywhere in the policy that suggests that the named insured must be the mortgagor. The policy language is "[i]f a mortgagee is named in this policy," when it could say, ever so easily, "if *your* mortgagee is named in this policy."

¶ 51    In construing an insurance policy, as with any contract, we begin with the plain language of the policy itself and "will not search for ambiguity where there is none." *Swiderski*, 223 Ill. 2d at 363. There is simply no construction of the language in the State Farm policy before us that supports State Farm's argument that protection for the mortgagee only exists if the named insured is the mortgagor.

¶ 52    Third, the *Bohn* case is over 100 years old and is not controlling authority. See *Kostal v. Pinkus Dermatopathology Laboratory, P.C.*, 357 Ill. App. 3d 381, 395 (2005) (noting that court decisions from other jurisdictions are not binding on this court but may be considered as persuasive authority). And, as Seterus points out, more recent cases, including our recent decision in *Old Second*, 2015 IL App (1st) 140265, ¶ 20, speak in terms of the "named insured," without necessarily equating that person with the mortgagor.

¶ 53    Fourth, but perhaps most importantly, the policy language that the court was construing in *Bohn* was different and stated in relevant part: "It is agreed that this insurance, as to the interests of the above-named mortgagee or beneficiary, or its assigns, only, shall not be invalidated by any act or neglect of the mortgagor or owner of the property insured." *Bohn*, 65 F. at 167. Under that language, in contrast to the policy language here, an argument could be made that the insurance policy contemplated the named insured was the mortgagor, or at least the owner of the property.

¶ 54    Fifth, as Seterus noted persuasively in oral argument, there are situations in which the insurer has every reason to cover the mortgagee, although the policy holder is not the mortgagor. For example, a wife may be the mortgagor, while the husband is the named insured, and they are both owners of the insured home.

¶ 55    Finally, we are persuaded by the cases that Seterus cites in which a loss payee is someone other than a mortgagee. These cases are *Posner v. Firemen's Insurance Co.*, 49 Ill. App. 2d 209 (1964), and *Stonegate Insurance Co. v. Hongsermeier*, 2017 IL App (1st) 151835, both of which recognize that the separate contract between insurer and the loss payee is generally not dependent on privity or any specific relationship between the named insured and the loss payee. We are not persuaded that the rule needs to be different when the loss payee is the mortgagee.

¶ 56    In short, we do not agree that Seterus's coverage was dependent on the named insured holding the mortgage. We turn now to State Farm's final contention that Seterus should be

denied coverage because certain conditions precedent for coverage had not occurred.

¶ 57                              4. Conditions Precedent

¶ 58      State Farm lastly contends that Seterus should be denied coverage because certain conditions precedent for coverage had not occurred at the time the claims were filed, specifically referring to the policy's condition that the insured premises be used as a residence premises. The insurance policy provided that State Farm would "cover the dwelling used principally as a private residence on the residence premises shown in the declarations" and defined a "residence premises" as "the one, two, three or four-family dwelling, other structures and grounds," or "that part of any other building" "where [the insured] resides and which is shown in the Declarations."

¶ 59      According to State Farm, for any party to recover under the policy, whether the named insured or the mortgagee, that party must show that the residence premises shown in the policy's declarations is a dwelling where the named insured resided. State Farm argues that because this residence premises requirement is a condition precedent to coverage, its absence "negates any conclusion that there can be coverage under the Policy," as "the insuring provisions of the Policy were not met."

¶ 60      As State Farm points out, the court in *Old Second* acknowledged a difference between conditions precedent and subsequent in an insurance policy, stating: "While conditions precedent concern the very attachment of risk in the first instance, a condition subsequent applies to conditions which must be maintained or met after the risk has attached in order that the policy remain in full force and effect." (Internal quotation marks omitted.) *Old Second*, 2015 IL App (1st) 140265, ¶ 28. But, in upholding coverage to the mortgagee under a standard mortgage clause on the facts before it, the *Old Second* court also observed that certain jurisdictions had found that "to best effectuate the language and purpose underlying the standard mortgage clause, the mortgagee must not be refused coverage as long as the loss did not result from its own breach of policy." *Id.* ¶ 25. Although the court in *Old Second* cited those cases favorably, it did not need to consider whether a mortgagee would be protected regardless of any act of the named insured, including those in which the named insured failed to adhere to a condition precedent to coverage.

¶ 61      Here, however, we have fallen in with that line of cases, holding that the standard mortgage clause protects the mortgagee even if there is no coverage for the named insured and the policy is void as to the named insured. This broad protection for the mortgagee includes situations where conditions precedent to coverage under the policy have not been met by the named insured. See, *e.g.*, *Wells Fargo Bank, N.A. v. Null*, 847 N.W.2d 657, 527-30 (Mich. Ct. App. 2014) (finding that where the named insured did not reside in the insured premises, as required for coverage by the subject policy's residence premises provision, the mortgagee could still be afforded protection under the standard mortgage clause "even when the act or neglect of the insured occur[red] before the issuance of the policy"). Accordingly, Seterus is entitled to coverage regardless of whether Jeff actually used the Property as his residence premises.

¶ 62                         B. The Dubrovskys' Arguments on Appeal

¶ 63      The Dubrovskys' notice of appeal focuses exclusively on the circuit court orders finding that the proceeds of the insurance policy were to be distributed subject to the terms of the mortgage. In their appellate brief, however, they do not discuss the distribution of the

proceeds, instead focusing on the need for a determination as to Jeff's insurable interest in the Property and whether State Farm could rescind the policy more than three years after it had been issued. Thus they have forfeited any argument as to the distribution. See Ill. S. Ct. R. 341(h)(7) (eff. July 1, 2017) (stating that "points not argued" in a party's brief as forfeited).

¶ 64 The arguments that the Dubrovskys do make in their brief are moot in light of our affirming the circuit court's ruling that Seterus is entitled to coverage. The presumptions of the circuit court in awarding coverage were that Jeff might have an insurable interest—but whether he did would not affect whether Seterus was entitled to coverage—and that recession was inapplicable. The only possible arguments the Dubrovskys could have now on appeal go to distribution of proceeds if either of them were entitled to any payment under the policy, and as noted, those arguments are forfeited.

¶ 65                                    IV. CONCLUSION
¶ 66 For the foregoing reasons, we affirm the judgment of the circuit court.

¶ 67 Affirmed.