## Andrew Crawford et al., for use of H. G. Stone, v. Aachen & Munich Fire Ins. Co.

1. INSURANCE—*Loss, if Any, Payable to Mortgagees as Their Interest May Appear.*—A policy of fire insurance containing a clause that the loss, if any, shall be payable to J. H. and A. C. as their interest may appear, is in effect an independent agreement with the mortgagees which may be enforced in their own names.

2. SAME—*Insurable Interest of Stockholders— Corporations.* — A stockholder in a corporation who owns shares of stock worth more than $20,000, has an insurable interest in the corporate property.

3. SAME—*What Does Not Amount to Cancellation of Policy by Mortgagee.*—Where H., a mortgagee, has canceled an insurance policy as to his interest and attempted to cancel it as to the interest of C., another mortgagee, the acceptance by C. of unearned premiums on the policy, the property having been already destroyed by fire, is no waiver of his claims for a loss against the insurance company, nor is it a ratification of the cancellation of the policy.

**Assumpsit,** upon a fire insurance policy. Appeal from the Circuit Court of Cook County; the Hon. CHARLES G. NEELY, Judge, presiding. Heard in this court at the October term, 1901. Reversed, and judgment in this court. Opinion filed March 6, 1902.

**Statement by the Court.**—Andrew Crawford and J. H. Graham, for the use of H. G. Stone, brought assumpsit on a policy of insurance made by appellee, dated July 17, 1897, for the sum of $1,500, upon the property of the St. Joseph Hotel Co., the declaration being special. The plea was the general issue. February 18, 1901, the death of Andrew Crawford was suggested, and it was ordered that

the cause proceed in the name of Graham for the use of Stone. A trial before the court without a jury resulted in a finding for the defendant, the appellee, and judgment thereon, from which this appeal is taken.

The policy, which was offered in evidence, insures the St. Joseph Hotel Co., for one year from July 17, 1897, against loss or damage by fire, to an amount not to exceed $1,500 on the property which is described. Attached to the policy is a slip in the following words : " Loss, if any, payable to J. H. Graham and Andrew Crawford as their interest may appear." The policy also contains these provisions :

" This policy shall be canceled at any time at the request of the insured, or by the company, by giving five days' notice of such cancellation. If this policy shall be canceled as hereinbefore provided, or become void or cease, the premium having been actually paid, the unearned portion shall be returned on surrender of this policy or last renewal, this company retaining the customary short rate, except that when this policy is canceled by this company by giving notice, it shall retain only *pro rata* premium.   *   *   * If with the consent of this company an interest under this policy shall exist in favor of a mortgage, or of any person or corporation having an interest in the subject of insurance other than the interest of the insured, as described herein, the conditions hereinbefore contained shall apply in the manner expressed in said provisions and conditions of insurance relating to such interest as shall be written upon, attached or appended hereto."

The further facts shown by the evidence are in substance, viz.: the premium was paid to the appellee by a check of Mr. Stone, and the policy was delivered to Mr. Crawford by the agent of the company. The capital stock of the St. Joseph Hotel Co., which was a corporation, was $50,000, and was owned by said Graham and Crawford in equal parts, except one share of $500, which was owned by J. S. Morton. Graham was the president and Morton the secretary of the hotel company. At the time the policy was made Graham and Crawford had a mortgage on the hotel property for money loaned by them to the hotel company, but it was released, the mortgage having been paid in Jan-

uary or February, 1898; also Stone had a lease of the hotel property and was making certain improvements thereon, so as to properly run the hotel, and by an arrangement between him and Mr. Crawford the policy in question, with two others, aggregating $1,500, was taken upon the property, and after they were delivered to Mr. Crawford the latter handed them to Mr. Stone.

May 4, 1898, Mr. Stone made an agreement of settlement with the hotel company, his lessor, of certain matters growing out of his lease, by which the company paid him $753.17, in full of all demands to date between them, including all improvements made by Stone on the hotel property. In this settlement the said insurance policies, aggregating $3,000, were referred to, and it was agreed that Stone should receive from the hotel company any unearned premium upon said policies which might be received by the hotel company, and if any loss should occur before the policies should be canceled, then the hotel company should pay to Stone any amount it might receive on said policies. This agreement was made by Mr. Crawford on behalf of the hotel company.

March 3, 1898, the hotel company, acting by said Morton, and the said Graham acting for himself and Crawford as mortgagees, but without the authority, knowledge or consent of Crawford, attempted to surrender and cancel the policy here in question, and the appellee thereupon paid to the hotel company $17.75, the *pro rata* unearned premium thereon. The policy itself was not, however, in fact surrendered, it being claimed on behalf of Morton and Graham that it was lost or mislaid. The policy was then in the possession of Mr. Stone, and had been from a short time after its delivery to Mr. Crawford by the appellee. A receipt given at the time to appellee, stating the cancellation, was signed, viz.: " J. H. Graham, A. Crawford, mortgagees," the name of Crawford being signed by Graham.

January 1, 1899, the hotel company sent a check to Mr. Crawford for certain moneys due him by it, accompanying it with a statement of account. This statement of account and check included the $17.75 for the unearned premium paid by

appellee to the hotel company. This occurred nearly six months after a fire which totally destroyed the insured property. The fire was about July 10, 1898. After receiving the return premium, as above stated, it was offered by Mr. Crawford to Mr. Stone, but the latter declined to receive it.

The policy in question was given by Mr. Stone to Mr. Crawford at the time of the settlement of May 18, 1898, was returned by Crawford to Stone within ten or fifteen days thereafter, and he retained it until after the fire, when it was delivered to Mr. Crawford in order that he might make proof of loss under it. Mr. Crawford was informed of the attempted cancellation of the policy, so far as the record shows, for the first time after the fire occurred.

January 13, 1899, the hotel company, by Graham, its president, and the said Graham and Crawford as individuals, assigned the said policy to Mr. Stone, the assignment being attested by the secretary of the company.

After the fire, upon demand being made upon the general manager of the appellee company for payment of the policy, he refused to do anything regarding the loss, upon the ground, as he claimed, that the policy had been canceled, and gave no other reason for refusal of payment.

The hotel property, at the time of the fire, is shown to have been valued at $35,000 and its furniture at about $10,000, the engine house $800 to $1,000 and its contents upward of $1,500. This policy covered, by its terms, all these different items of property.

The clear preponderance of the evidence shows that Mr. Crawford did not consent to, approve nor ratify the attempted cancellation of said policy by Graham, and the latter had no authority from Crawford to cancel it.

W. W. GURLEY, attorney for appellants.

BARGER & HICKS, attorneys for appellee.

MR. PRESIDING JUSTICE WINDES delivered the opinion of the court.

It is apparent from the foregoing statement of the evi-

dence, that while the policy sued upon purports to be and is in form a contract of insurance by the appellee company of the property of the St. Joseph Hotel Co., loss, if any, payable to Graham and Crawford, as their interest may appear, it is in fact and in law a contract insuring the interests in the property of the hotel company of Graham and Crawford, as it may appear. The contract was made with Crawford by the agents of appellee and delivered to him. Under a similar state of facts to the case at bar, it was held in Queen Ins. Co. v. Dearborn S. L. & B. Ass'n, 175 Ill. 115, that such an insurance contract was an independent agreement with the mortgagees in that case, which might be enforced in their own names. The only difference between the contract in that case and the one here under consideration, is in the use of the word "hereto" at the end of the second clause of the policy quoted in the statement, while in that case the word "thereto" was used. We are unable to perceive why the use of the word "hereto" should make any difference with the principle announced in that case, viz., that the contract was in fact a contract of insurance with the mortgagee instead of being one with the mortgagor. It follows that the earlier cases in the Supreme Court and in other jurisdictions which seem to hold to the contrary, are not controlling.

At the time the policy in question was taken out, both Mr. Crawford and Mr. Graham had insurable interests in the property of the hotel company, both because they were mortgagees of its property, and stockholders of all the stock of the hotel company except one share of $500. 1 Cook on Stockholders, Sec. 11, p. 18; 1 May on Ins., Sec. 76 (3d Ed.); 13 Am. & Eng. Ency. Law (2d Ed.), 176, and cases cited; Riggs v. C. M. Ins. Co., 125 N. Y. 7–11, and cases cited; Glover v. Wells, 40 Ill. App. 350; affirmed, 140 Ill. 102.

Some of the authorities seem to hold that a stockholder, as such, has not an insurable interest where the corporation has already insured its property to its full value, but in this case the only evidence of other insurance than the policy

here in question, is of two other policies aggregating $1,500. Counsel for appellee say in their brief that the corporation had insurance to the amount of $19,000, but they do not refer to the record, and neither the abstract nor the additional abstract shows any such amount of insurance. Even if it did so show, it would still be for less than the value of the property of the hotel company, which appears from the evidence to have been more than $47,000. There is no evidence of any amount of indebtedness of the hotel company when the policy was issued.

Before the fire occurred there is evidence to the effect that the mortgage to Crawford and Graham had been paid, and also that it was still a lien. Even if the mortgage was paid, there still remained, at the time of the fire, an interest in Mr. Crawford as stockholder in the hotel company, worth more than $20,000, which is sufficient as an insurable interest in him.

As will be seen from the statement, on March 3, 1898, some four months prior to the fire, the hotel company and Graham, as mortgagee, canceled the policy in question, so far as their interests were concerned, and Graham, by signing Crawford's name, attempted to cancel the policy for Crawford as mortgagee, but there is no sufficient evidence that he had any authority so to do, nor was his act in that regard ever approved or ratified by Crawford. It is, however, contended that because the hotel company paid to Crawford the unearned premium of $17.75, which was paid to it by the appellee at the time the policy was canceled as to the hotel company, he thereby ratified the cancellation. We think not. At the time Crawford received this unearned premium his rights under the policy had long before accrued, because of the loss, and such payment to him, without express agreement to that effect, would not be a waiver of his claim against appellee for the loss. No such agreement is shown, but on the contrary he thereafter assigned his interest in the policy to Mr. Stone, which would tend to show that he still considered the policy in force.

Even if the cancellation of the policy as to Crawford as mortgagee could be said to be binding upon him, still there remained his interest as stockholder, as to which interest there is no evidence whatever of any cancellation of the policy.

The learned counsel for appellee make the further claim that because there is a provision in the policy that it should be void in case it should be assigned before a loss without the consent of the company indorsed thereon, there could be no recovery, for the reason that the agreement of settlement of May 4, 1893, referred to in the statement, is in effect an assignment. We can not so construe it. There is no language in the agreement to that effect, but only that in case of a loss the hotel company should pay to Stone any amount that it might receive upon the policy.

It was suggested in oral argument, though it does not appear in the brief and argument for appellee, that inasmuch as Mr. Crawford had died pending the suit, and there had been no substitution of his personal representative as plaintiff, and because Graham had canceled his interest in the policy, there could be no recovery in his name. This suggestion can not avail appellee, for two reasons, viz.: First, there was no attempt, so far as appears from the record, by Mr. Graham to cancel any interest he had in the policy, except as mortgagee, thus leaving his interest as stockholder still in force and the policy uncanceled, and all his interest in the policy was assigned to Mr. Stone; second, even if his interest in the policy had all been canceled, leaving no right of action except in the representative of Mr. Crawford, the suit would not, under the statute, chapter 1, section 23, abate, but could properly be conducted in the name of Stone alone.

The learned trial court, although it seems to have held the law, judging from the proposition marked "held," with the appellant, still, as matter of fact, it found that the policy had been canceled. This we think was manifestly against the evidence.

The fact that the name of Stone was not substituted as

plaintiff in the Circuit Court, is not cause for reversal under the statute of amendments, chapter 7, section 6.

The judgment of the Circuit Court is reversed and judgment entered here in favor of appellant and against appellee, for the amount of the policy, less $17.75, the unearned premium paid to Mr. Crawford, with interest at five per centum per annum from July 12, 1898 (when demand for payment was made), to this date, making a total of $1,749.50. He will also recover his costs in the Circuit Court. Reversed, and judgment in this court.