THE SUBURBAN, INC., Plaintiff-Appellee, v. CINCINNATI INSURANCE COMPANY, Defendant-Appellant (Larry Joe Pasley, Defendant-Appellee).

Third District   No. 3—00—0704

Opinion filed June 20, 2001.

John A. Beyer (argued), of Satter, Beyer & Bertram, of Pontiac, for appellant.

L. Lee Smith and Bradley M. Butler (argued), both of Westervelt, Johnson, Nicoll & Keller, of Peoria, for appellee The Suburban, Inc.

Gordon W. Gates (argued), of Gates, Wise & Schlosser, P.C., of Springfield, for appellee Larry Joe Pasley.

JUSTICE BRESLIN delivered the opinion of the court:

Plaintiff The Suburban, Inc. (Suburban), and defendant Larry Joe Pasley entered into a contract for the sale of a tavern subsequently destroyed by fire. Suburban filed a complaint against Pasley and defendant Cincinnati Insurance Company (Cincinnati) seeking a declaration that it was entitled to the proceeds of an insurance policy issued by Cincinnati. Pasley filed a motion for summary judgment which the trial court granted.

We reverse and remand, holding that the doctrine of equitable conversion does not entitle a purchaser/loss payee to a direct action suit against the insurer of lost or damaged property. Additionally, we hold that while a simple loss payable clause in an insurance policy cannot support a claim by a loss payee directly against an insurer, a loss payee may maintain a direct action in his own name if he can show that he contracted for the insurance and paid the premiums.

## FACTS

Suburban owned and operated a tavern and restaurant on which it obtained insurance through a local agent, Town and Country. A comprehensive property insurance policy was issued by Cincinnati for a policy period of December 18, 1995, to December 18, 1998.

Suburban entered into an installment sale agreement with Pasley on January 14, 1997, for the sale of the tavern. The agreement provided that Pasley was to make periodic payments for seven years, after which time a deed to the tavern would issue to Pasley. Pasley was also required to maintain insurance on the property "with loss to be made payable to the parties hereto according to their respective interests at the time of loss."

Sometime after Pasley and Suburban entered into the installment sale agreement, Pasley was added as "loss payee" via a contract-of-sale endorsement clause to the insurance policy on the tavern issued by Cincinnati. Suburban remained the "named insured." The actual events that precipitated the addition of Pasley as loss payee to the policy are disputed by the parties.

In the policy issued by Cincinnati, the words "you" and "your" are defined as the "named insured." That section of the endorsement devoted to the addition of loss payees because of a contract of sale provides as follows:

"D. CONTRACT OF SALE

1. The Loss Payee shown in the Schedule or in the Declarations is a person or organization you have entered a contract with for the sale of Covered Property.

2. For Covered Property in which both you and the Loss Payee have an insurable interest, we will:

a. Adjust losses with you; and

b. Pay any claim for loss or damage jointly to you and the Loss Payee, as interests may appear.

3. The following is added to the OTHER INSURANCE Condition:

For Covered Property that is the subject of a contract of sale, the word 'you' includes the Loss Payee."

The endorsement was effective March 19, 1997. On April 6, 1997, the tavern was destroyed by fire. After Suburban filed an initial claim with Cincinnati, disputes arose between Pasley and Suburban regarding who was entitled to the proceeds and who had the right to control the claim process.

## PROCEDURAL HISTORY

Suburban filed a complaint seeking a declaration that it was entitled to the proceeds and alleged that Pasley's only interest, if any, was limited to the amount he paid pursuant to the installment sales agreement at the time the building was destroyed. In the complaint, Suburban alleged that it maintained property insurance on the tavern with Cincinnati from December of 1990 up to the date of the fire, that Pasley failed to keep the property insured at any time, and that Cincinnati caused Pasley to be added to Suburban's policy as loss payee without Suburban's consent.

In his answer to the complaint, Pasley denied that he did not keep the property insured. Pasley filed a motion for summary judgment, alleging that under the doctrine of equitable conversion, he was the equitable owner of the property and was entitled to the insurance proceeds to rebuild the tavern. In his memorandum of law in support of that motion, Pasley alleged that he contacted Town and Country, the same insurance agent utilized by Suburban, upon execution of the installment sales contract, seeking to insure the property through identical coverage as that provided to Suburban. Town and Country sold Pasley such a policy; however, Suburban remained the named insured while Pasley was added as loss payee. Pasley also alleged that from the date of the contract of sale he paid all premiums to insure the property while Suburban paid none.

The trial court determined that Pasley's motion for summary judgment was, in actuality, a motion for partial summary judgment. Rely-

ing upon the doctrine of equitable conversion, the court granted the motion, finding that Pasley held equitable title to the property and, thus, was entitled to the insurance proceeds subject to Suburban's interest.

Thereafter, Pasley filed a motion for final summary judgment, requesting that the court order Suburban to endorse a check to Pasley, paid by Cincinnati and held in escrow, in the amount of $235,975, constituting the actual value of the lost property. Additionally, Pasley sought a ruling that he was entitled to rebuild the property and seek replacement costs directly from Cincinnati for any monies expended above and beyond the actual value of the property. Cincinnati filed a motion to dismiss on the basis that, pursuant to the policy language, only the named insured, Suburban, was entitled to seek replacement costs.

The trial court granted Pasley's motion for summary judgment and denied Cincinnati's motion to dismiss. The court maintained jurisdiction to allow for any future equitable relief that might become necessary to conclude the controversy. Cincinnati's motion to reconsider was denied by the court, as was its oral request to file an interlocutory appeal.

Ultimately, Pasley filed a motion for additional relief, requesting the court to order Cincinnati to pay Pasley $135,000 for the additional costs expended in replacing the lost structure. The court granted that motion in a final and appealable order. Cincinnati timely appealed.

## ANALYSIS

The sole issue for our review is whether the trial court erred when it granted Pasley's motion for summary judgment and ordered Cincinnati to pay Pasley $135,000 in replacement costs.

●1 Summary judgment is appropriate when the pleadings, depositions and admissions on file show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2—1005 (West 1998). An appellate court performs its review of an order granting or denying summary judgment *de novo*. *Johnson v. Owens-Corning Fiberglass Corp.*, 284 Ill. App. 3d 669, 672 N.E.2d 885 (1996).

On appeal, Cincinnati suggests that the trial court misapplied the doctrine of equitable conversion to find that Pasley had replaced Suburban as the named insured. Cincinnati also suggests that, due to the contract language, only Suburban could rebuild and seek replacement costs; however, because Suburban spent nothing in replacement costs, Cincinnati is required to pay nothing in replacement costs.

We turn first to Cincinnati's suggestion that the doctrine of equitable conversion was misapplied by the trial court.

●2 Under the doctrine of equitable conversion, the seller of land, at the time a land sale contract is entered into, holds legal title to the property in trust for the buyer, while the buyer becomes the equitable owner of the property. *La Salle Bank, N.I. v. First American Bank*, 316 Ill. App. 3d 515, 736 N.E.2d 619 (2000). It is well recognized in Illinois that the doctrine of equitable conversion is only enforceable as between the parties to the sale contract and does not alter the rights and obligations of third parties, like insurers. See, *e.g.*, *State Farm General Insurance Co. v. Stewart*, 288 Ill. App. 3d 678, 681 N.E.2d 625 (1997).

●3 Thus, while the doctrine of equitable conversion would direct how insurance proceeds would be distributed between seller and buyer, its application has no place with respect to a wholly separate contract between one or both of the parties to the sale contract and a third party, the insurer. It certainly cannot be utilized to reform the insurance contract to replace Suburban as the "named insured" with Pasley. Accordingly, we find that the trial court erred in applying the doctrine of equitable conversion to hold that Pasley was entitled to directly seek recovery under the insurance policy.

We turn next to Cincinnati's argument that only Suburban, as the named insured, was entitled to directly seek replacement costs from Cincinnati.

In *Posner v. Firemen's Insurance Co.*, 49 Ill. App. 2d 209, 199 N.E.2d 44 (1964), the plaintiffs sought insurance proceeds under a loss payable clause similar to the one in this case. The insurance contract in *Posner* provided that "[l]oss, if any, to be adjusted only with the Insured named herein and payable to the Insured and *** [plaintiff, as loss payee,] as their respective interests may appear." *Posner*, 49 Ill. App. 2d at 211, 199 N.E.2d at 45.

The court granted insurer's motion to dismiss, holding that a loss payable clause, without more, cannot support a claim by a loss payee directly against an insurer. Rather, there must be more, such as language creating a separate contractual relationship between the insurer and the third party. *Posner*, 49 Ill. App. 2d at 215, 199 N.E.2d at 47. In the absence of such contract language, the rights of a loss payee under a simple loss payable clause are derivative in nature and wholly dependent upon the rights of the named insured. *Posner*, 49 Ill. App. 3d at 216, 199 N.E.2d at 48, citing *Barwick v. Westchester Fire Insurance Co.*, 266 Ill. App. 574, 577 (1932).

What language is sufficient to create a separate contractual relationship between an insurer and a loss payee was considered in *West Bend Mutual Insurance Co. v. Salemi*, 158 Ill. App. 3d 241, 511 N.E.2d 785 (1987). In that case, the buyer of certain property obtained insurance with a contract-of-sale endorsement naming buyer as the insured and seller as the loss payee.

Buyer intentionally set fire to the property and, thereafter, seller filed a claim for insurance. As in the case currently before this court, insurer contended that seller's rights, as loss payee, were derived from buyer's, as the named insured. Because buyer could not recover due to her arson, seller could not either. *West Bend*, 158 Ill. App. 3d at 245, 511 N.E.2d at 787.

The appellate court disagreed. In distinguishing *Posner*, the court held that seller, even though a loss payee, could maintain her own suit against insurer because seller's rights were established by the contract-of-sale endorsement. That endorsement provided that "[a] contract for sale of the property described in this policy having been made between the Insured and [seller] *** the interest of said last named party is also insured hereunder." *West Bend*, 158 Ill. App. 3d at 246, 511 N.E.2d at 787.

From this language, the court extrapolated a recognition by insurer that, pursuant to the contract for sale, seller had an interest in the property separate and distinct from buyer's interest. Additionally, insurer's agreement to "also insure[ ] hereunder" seller's interest gave rise to an independent contractual relationship between seller and insurer sufficient to support recovery directly by seller. *West Bend*, 158 Ill. App. 3d at 247, 511 N.E.2d at 788.

●4 In this case, the contract-of-sale endorsement provided that for covered property in which both the named insured and loss payee have an interest, Cincinnati will "adjust losses with you" and pay any claims for loss or damage "jointly to you and the Loss Payee." "You" is defined in the policy as the "named insured" (here, Suburban). While the endorsement recognizes that the loss payee may also have an interest in the covered property, there is no language similar to that in *West Bend* wherein Cincinnati agreed to "also insure[ ] hereunder" that interest. Rather, the endorsement clause at issue utilizes language very similar to that found in the endorsement clause in *Posner*. Thus, it would appear that Pasley's interests are wholly dependant upon Suburban's.

Under the clause of the insurance contract relating to replacement costs, Cincinnati agreed to pay the least of (1) the insurance limits; (2) the cost to replace; or (3) the "amount you [the named insured] actually expended" for replacement costs. Because Suburban, the named insured, expended nothing, Cincinnati would ostensibly owe nothing.

Our analysis does not end there, however. It is the law in Illinois that when a party contracts for insurance, pays the premium, and the insurer makes the loss payable to such party, the agreement to pay is a contract with the party who paid the consideration, and he has a right of action in his own name, despite the fact that the insurance is

in the name of another. See *Traders' Insurance Co. v. Pacaud*, 150 Ill. 245, 37 N.E. 460 (1894); *Aetna Insurance Co. v. California Union Insurance Co.*, 136 Ill. App. 3d 288, 483 N.E.2d 550 (1985). Although both *Traders'* and *Aetna* involved issues relating to "other insurance" clauses, we find the general statement of the law pertaining to the rights of loss payees who pay the insurance premiums equally applicable to this case.

Though Suburban alleged, in its complaint for declaratory judgment, that Pasley never kept the premises insured, Pasley denied that allegation in his answer to the complaint. Additionally, in his memorandum of law in support of his motion for summary judgment, Pasley alleged that he obtained a policy of insurance from Cincinnati and that he paid all premiums. We do not find in the record any conclusive evidence as to whether Suburban or Pasley paid the insurance premiums. Accordingly, we find that a genuine issue of material fact existed and that summary judgment was therefore inappropriate. Having determined so, we reverse the trial court's order directing Cincinnati to pay Pasley $135,000 as replacement costs under the insurance policy and remand this case to the trial court.

For the foregoing reasons, the judgment of the circuit court of Tazewell County is reversed and this cause is remanded for further proceedings consistent with this opinion.

Reversed and remanded.

HOLDRIDGE and McDADE, JJ., concur.