# Illinois Official Reports

## Appellate Court

*Stonegate Insurance Co. v. Hongsermeier*, 2017 IL App (1st) 151835

| | |
|---|---|
| Appellate Court Caption | STONEGATE INSURANCE COMPANY, Plaintiff-Appellant, v. MARK HONGSERMEIER, RHONDA HONGSERMEIER, and OCWEN LOAN SERVICES, LLC, as Assignee of GMAC MORTGAGE, LLC, Defendants (Ocwen Loan Services, LLC, Defendant-Appellee). |
| District & No. | First District, Fifth Division<br>Docket No. 1-15-1835 |
| Filed | March 3, 2017 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 11-CH-39744; the Hon. Franklin U. Valderrama, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Samuel A. Shelist, of Shelist Law Firm, LLC, of Chicago, for appellant.<br><br>Michael A. Gilman, of Dykema Gossett PLLC, of Chicago, for appellee. |

Panel     JUSTICE REYES delivered the judgment of the court, with opinion. Presiding Justice Gordon and Justice Lampkin concurred in the judgment and opinion.

**OPINION**

¶ 1  Plaintiff Stonegate Insurance Company, a property insurer, appeals an order of the circuit court of Cook County granting summary judgment in favor of defendant Ocwen Loan Services, LLC. Defendant is the mortgagee and named loss payee in an insurance policy that was issued by plaintiff. On appeal, plaintiff argues that the circuit court erred in granting summary judgment and allowing defendant to recover under the insurance policy because (1) the insured owners did not occupy the property, which was a condition precedent to coverage, (2) questions of fact exist as to whether the mortgage clause in the policy provides defendant with coverage, and (3) the fraud clause in the policy precludes coverage for the owners of the residential premises and defendant. For the following reasons, we affirm.

¶ 2          BACKGROUND

¶ 3  On February 20, 2009, Mark Hongsermeier and Rhonda Hongsermeier (collectively, the owners) executed a mortgage with GSF Mortgage Corporation for property located at La Montee Drive, Rockford, Illinois (the property). The owners resided in the property from November 2004 through November 2010. The mortgage was subsequently assigned to GMAC Bank and later transferred to GMAC Mortgage, LLC (GMACM).

¶ 4  Thereafter, on February 21, 2011, plaintiff issued a hazard insurance policy (the policy) to the owners for the property against loss and damage caused to the property by fire, among other things. In the policy, the insured is defined as the owners and "residents of your household." Furthermore, the "insured location" is defined as the "residence premises," which is further defined as "the one family dwelling *** where you reside." The policy also included a mortgage clause to insure GMACM as the named loss payee and provided, in pertinent part:

"If a mortgagee is named in this policy, any loss payable under Coverage A or B will be paid to the mortgagee and you, as interests appear. *** If we deny your claim, that denial will not apply to a valid claim of the mortgagee, if the mortgagee:

a. Notifies us of any change in ownership, occupancy or substantial change in risk of which the mortgagee is aware;

b. Pays any premium due under this policy on demand if you have neglected to pay the premium[;] and

c. Submits a signed, sworn statement of loss within 60 days after receiving notice from us of your failure to do so. Policy conditions relating to Appraisal, Suit Against Us and Loss Payment apply to the mortgagee.

If we decide to cancel or not to renew the policy, the mortgagee will be notified at least 10 days before the date cancellation or nonrenewal takes effect."

In addition, the policy contained a fraud clause that provided:

"the entire policy will be void, if whether before or after a loss, an 'insured' has:

a. Intentionally concealed or misrepresented any material fact or circumstance;

> b. Engaged in fraudulent conduct; or
>
> c. Made false statements;
>
> relating to this insurance."

Plaintiff neither inspected the property nor spoke with the owners before it issued the policy. Thereafter, plaintiff forwarded to the owners and GMACM the policy declaration, which indicated the policy was effective on February 21, 2011. GMACM was not provided with a copy of the policy itself.

¶ 5    Prior to and after plaintiff issued the policy, GMACM retained CoreLogic Field Services (CoreLogic) to inspect the property. CoreLogic provided five inspection reports to GMACM. The first four reports described exterior visual inspections that occurred on July 28, 2010, September 25, 2010, October 22, 2010, and September 29, 2011. The four reports indicated the property was occupied and that the inspector had no contact with the occupant. The fifth inspection report stated that on November 1, 2011, an inspector communicated with the tenant on the property premises.

¶ 6    On or about November 4, 2011, a malfunctioning electrical outlet caused a fire that severely damaged the property. At the time when the incident occurred, the owners had leased the property to tenants who resided at the property instead of the owners. At the time of the fire, GMACM was the servicer of the mortgage loan.

¶ 7    On November 17, 2011, plaintiff filed a complaint for declaratory judgment, seeking a declaration that it did not have a duty to pay the owners because the owners were not occupying the property at the time of the fire. Thereafter, on January 4, 2012, plaintiff issued a notice of cancellation that was effective February 8, 2012. The notice indicated the property was not eligible for coverage under the policy because it was not occupied by the owners. On April 10, 2012, plaintiff filed a first amended complaint in which it joined GMACM as a defendant and asserted GMACM also could not recover because it knew the owners were not occupying the property before the fire but failed to notify plaintiff as required under the mortgage clause. In response, on August 14, 2012, GMACM filed an answer in which it stated it had "no knowledge" the property was rented at any time prior to the fire.

¶ 8    On the same day, August 14, 2012, GMACM filed a two-count counterclaim that was subsequently amended. In count I, GMACM requested a declaratory judgment that (1) it was insured under the policy, (2) plaintiff's denial of the owners' claim did not affect GMACM's claim for losses and damages to the property arising from the fire, and (3) GMACM's claim is valid. In count II, GMACM alleged breach of contract against plaintiff. In response, plaintiff filed an answer to GMACM's counterclaim along with affirmative defenses. Plaintiff alleged that (1) the entire policy was void because the owners had concealed or misrepresented that tenants occupied the property and (2) GMACM may not recover because it knew or should have known the property was rented but failed to meet its obligation to notify plaintiff as required in the mortgage clause. GMACM denied plaintiff's affirmative defenses. On August 15, 2012, the circuit court dismissed the owners from the lawsuit.

¶ 9    During the course of the litigation, defendant purchased GMACM's servicing rights and became the servicer of the mortgage loan. Subsequently, on September 23, 2013, defendant was substituted into the instant case and GMACM was dismissed.[1]

¶ 10    On March 5, 2014, defendant filed a motion for summary judgment, arguing that no genuine issues of material fact exist as to whether defendant is entitled to recovery under the policy. After the matter was fully briefed and argued, on September 23, 2014, the circuit court granted defendant's motion. In granting the motion, the circuit court stated the policy contained a standard mortgage clause that created an independent or separate insurance contract between the parties. The circuit court stated that, accordingly, the owners' alleged failure to notify plaintiff of a change in occupancy is, not by itself, a defense to a claim by defendant. The circuit court further stated that because the owners did not reside at the property when the policy was issued, there was no change in ownership, occupancy, or a substantial change in risk for defendant to report to plaintiff. Thereafter, on June 4, 2015, the circuit court denied plaintiff's motion to clarify and reconsider and issued its final judgment in this matter. On June 24, 2015, this appeal followed.

¶ 11                                    ANALYSIS

¶ 12    On appeal, plaintiff argues that the circuit court erred in granting summary judgment and permitting defendant to recover under the policy because (1) the owners' occupancy in the property was a condition precedent to coverage, (2) questions of fact exist as to whether the mortgage clause in the policy provides defendant with coverage, as GMACM knew or should have known the property was rented but failed to notify plaintiff as required in the mortgage clause, and (3) the fraud clause precludes coverage for the owners and defendant, as the owners purposely concealed the leasing of the property.

¶ 13    In response, defendant argues the circuit court correctly held the owner's leasing of the property did not permit plaintiff to deny coverage to GMACM because (1) the policy contained a "standard mortgage clause" that protected GMACM from the owners' acts or omissions, (2) there was no change of occupancy or substantial change of risk during the policy period, and (3) the fraud clause does not exclude coverage for defendant because the loss did not result from defendant's breach of the policy.

¶ 14    Summary judgment is appropriate when "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2014). Specifically, "[t]he construction of an insurance policy and a determination of the rights and obligations thereunder are questions of law for the court which are appropriate subjects for disposition by way of summary judgment." *Crum & Forster Managers Corp. v. Resolution Trust Corp.*, 156 Ill. 2d 384, 391 (1993). We review grants of summary judgment *de novo*. *Palm v. 2800 Lake Shore Drive Condominium Ass'n*, 2013 IL 110505, ¶ 28. Under *de novo* review, we perform the same analysis that a trial court would perform. *Khan v. BDO Seidman, LLP*, 408 Ill. App. 3d 564, 578 (2011). Having set forth the standard of review, we turn to consider whether the denial of the owners' interest in the policy

_____

[1]For clarity purposes, we continue to refer to GMACM in the remainder of this order as it was involved in the majority of this cause.

necessarily affected defendant's claim.

¶ 15                                A. Mortgage Clause

¶ 16     Generally, insurance policies are subject to the same rules of construction applicable to other types of contracts. *Nicor, Inc. v. Associated Electric & Gas Insurance Services Ltd.*, 223 Ill. 2d 407, 416 (2006). Our primary objective in construing the language of an insurance policy is to ascertain and give effect to the intention of the parties as expressed in the agreement. *Founders Insurance Co. v. Munoz*, 237 Ill. 2d 424, 433 (2010). Like any other contract, an insurance policy is to be construed as a whole, considering the type of insurance purchased, the risks involved, the subject matter that is insured, and the purpose of the contract. *Nicor, Inc.*, 223 Ill. 2d at 416; *Crum & Forster Managers Corp.*, 156 Ill. 2d at 391. Where the words of a policy are clear and unambiguous, they must be given their plain, ordinary meaning and be applied as written. *Central Illinois Light Co. v. Home Insurance Co.*, 213 Ill. 2d 141, 153 (2004). Words are ambiguous if they are susceptible to more than one reasonable interpretation, not simply if the parties can suggest creative possibilities for their meaning. *Valley Forge Insurance Co. v. Swiderski Electronics, Inc.*, 223 Ill. 2d 352, 363 (2006). This court will not search for ambiguity where none exists. *Crum & Forster Managers Corp.*, 156 Ill. 2d at 391.

¶ 17     There are two types of well-recognized mortgage clauses contained in property insurance policies that protect a mortgagee against losses or damages to a mortgaged property: (1) the simple mortgage clause and (2) the standard mortgage clause. *Old Second National Bank v. Indiana Insurance Co.*, 2015 IL App (1st) 140265, ¶ 20. Under a simple mortgage clause, a mortgagee is merely an appointee who receives insurance proceeds subject to its interest in the policy and to the extent of the insured's right of recovery. *Posner v. Firemen's Insurance Co.*, 49 Ill. App. 2d 209, 216 (1964). The rights of a mortgagee under a simple mortgage clause are wholly dependent on the rights of the insured (*The Suburban, Inc. v. Cincinnati Insurance Co.*, 323 Ill. App. 3d 278, 282 (2001)) and are subject to all of the same defenses to coverage as the insured (*Old Second*, 2015 IL App (1st) 140265, ¶ 20). A standard mortgage clause, on the other hand, creates a separate and independent contract between the insurer and the mortgagee. *Id.* Under such circumstances, the mortgagee is liable only for its own breaches and is protected from being denied coverage based on the acts or omissions of the named insured or the insured's noncompliance with the terms of the policy. *Id.* (citing *West Bend Mutual Insurance Co. v. Salemi*, 158 Ill. App. 3d 241, 246-47 (1987), and *City of Chicago v. Maynur*, 28 Ill. App. 3d 751 (1975)); *Posner*, 49 Ill. App. 2d at 214-15.

¶ 18     Defendant relies on *Old Second* to argue that the policy contained a standard mortgage clause that protected GMACM from the owners' acts or omissions. In response, plaintiff does not dispute that the policy contained a standard mortgage clause, but instead contends that *Old Second* is a case of first impression and that defendant's argument is based almost exclusively on out-of-state authority.

¶ 19     We initially note that while the circuit court granted the motion for summary judgment before the *Old Second* decision was issued on March 20, 2015, plaintiff thereafter filed the notice of appeal on June 24, 2015. It is well established that Illinois courts retroactively and prospectively apply their decisions to cases that are pending at the time they are issued, including cases on direct review in the appellate court. *Hooker v. Retirement Board of the Firemen's Annuity & Benefit Fund*, 391 Ill. App. 3d 129, 140 (2009) (citing *Heastie v. Roberts*,

226 Ill. 2d 515, 535 (2007)). A court, on the other hand, may decline to provide a decision retroactive effect where (1) the issuing court expressly states its decision will only be applied prospectively or (2) the decision of the issuing court establishes a new principle of law, either by overruling clear past precedent on which litigants may have relied, or by deciding an issue of first impression whose resolution was not clearly foreshadowed. *Heastie*, 226 Ill. 2d at 535-36.

¶ 20    Here, the *Old Second* court did not indicate that its decision would only be applied prospectively. See *Old Second*, 2015 IL App (1st) 140265; *Heastie*, 226 Ill. 2d at 535-36. More importantly, although the *Old Second* court did decide an issue of first impression as to the interplay between a vacancy provision and a standard mortgage clause in an insurance policy, the court's decision was not the first to recognize that a standard mortgage clause protects the mortgagee from being denied coverage based on the acts or omissions of the named insured. See *Salemi*, 158 Ill. App. 3d at 246-47; see *Posner*, 49 Ill. App. 2d at 214-15.

¶ 21    In *Posner*, the mortgagees sought insurance proceeds under a simple loss payable clause, which provided that the loss was to be payable to the named insured and the mortgagees according to their interests. *Posner*, 49 Ill. App. 2d at 211. While th*e Posner* court found the insurance policy at issue did not contain a standard mortgage clause, the court did recognize that a standard mortgage clause "specifically protect[ed] the mortgagee from any acts or omissions of the named insured." *Id.* at 214-15 (recognizing insurance policies in *Queen Insurance Co. v. Dearborn Savings, Loan & Building Ass'n*, 75 Ill. App. 371 (1898), *Hartford Fire Insurance Co. v. Olcott*, 97 Ill. 439 (1881), and *Traders' Insurance Co. v. Race*, 142 Ill. 338 (1892) as forerunners of the present-day standard mortgage clause). Thereafter, the court in *Salemi* followed *Posner* in also recognizing that "a standard mortgage clause which specifically protected a mortgagee from acts or omissions of the named insured would support recovery directly by a mortgagee." *Salemi*, 158 Ill. App. 3d at 246-47 (citing *Posner*, 49 Ill. App. 2d at 215).

¶ 22    Here, we note that both *Posner* and *Salemi* were decided, and therefore in effect, prior to the time plaintiff filed his complaint. We thus find that, as to the issue of whether a standard mortgage clause protects the mortgagee from being denied coverage based on the acts or omissions of the named insured, *Old Second* neither decided an issue of first impression nor established a new principle of law. See *Old Second*, 2015 IL App (1st) 140265, ¶¶ 20-21 (citing *Salemi*, 158 Ill. App. 3d 241). As aforementioned, we recognize that the *Old Second* court did decide an issue of first impression as to the interplay between a vacancy provision and a standard mortgage clause in an insurance policy. The issues raised here, however, do not involve a vacancy provision. Accordingly, we find that the *Old Second* court's analysis regarding the standard mortgage clause applies to the instant case. *Heastie*, 226 Ill. 2d at 536.

¶ 23    In determining whether the denial of the owners' interest in the policy necessarily affected defendant's claim, the primary issue before this court is whether the mortgage clause in the policy is a standard mortgage clause. In *Old Second*, a mortgagee sought insurance proceeds under a loss payable clause, which provided: " 'if we deny [the insured's] claim because of [the insured's] acts or because [the insured] failed to comply with the terms of this policy, the [mortgagee] will still have the right to receive loss payment' " if the mortgagee satisfies certain enumerated conditions. (Emphasis omitted.) *Old Second*, 2015 IL App (1st) 140265, ¶ 21. The *Old Second* court relied on this language to find that the loss payable clause was in fact a standard mortgage clause.

¶ 24    Here, the mortgage clause employs language that is similar to the loss payable clause in *Old Second*, which provides in pertinent part: "if we deny your claim, that denial will not apply to a valid claim of the mortgagee, if the mortgagee" satisfies certain enumerated conditions. As this court found in *Old Second*, we likewise find here that the mortgage clause in the policy constituted a standard mortgage clause. *Id.* Accordingly, we conclude that the denial of the owners' claim does not necessarily apply to defendant's interest. *Id.* ¶ 20.

¶ 25    Furthermore, assuming *arguendo* that the mortgage clause does not amount to a standard mortgage clause, we still find that a separate contractual relationship was established between plaintiff and defendant. In this regard, we find *Posner* instructive. As aforementioned, the *Posner* court held that a standard mortgage clause protected a mortgagee from acts or omissions of the named insured. *Posner*, 49 Ill. App. 2d at 214-15. The *Posner* court went on, however, and held that a named loss payee could also recover independently when the insurance policy contains additional language creating a separate contractual relationship between the insurer and the loss payee. See *id.* at 215; *Suburban*, 323 Ill. App. 3d at 282; *Salemi*, 158 Ill. App. 3d at 247. The *Posner* court provided the following as an example of such language:

> " 'If with the consent of this company an interest under this policy shall exist in favor of a mortgage, or of any person or corporation having an interest in the subject of insurance other than the interest of the insured, as described herein, the conditions hereinbefore contained shall apply in the manner expressed in said provisions and conditions of insurance relating to such interest as shall be written upon, attached or appended hereto.' " *Posner*, 49 Ill. App. 2d at 215 (quoting *Crawford v. Aachen & Munich Fire Insurance Co.*, 100 Ill. App. 454, 455 (1902)).

In its determination, the *Posner* court found that the simple loss payable clause did not include such additional language that created a separate contractual relationship between the insured and the loss payees. *Id.* at 216. The *Posner* court accordingly held the trial court was correct in granting the insurer's motion to dismiss, finding that the simple loss payable clause, without more, could not support the loss payee's claim against the insurer. *Id.* at 215, 218.

¶ 26    In the instant case, unlike the parties in *Posner*, a separate contractual relationship was established between plaintiff and defendant. The language of the mortgage clause at issue here clearly provides that a denial of the insured's claim does not necessarily apply to the mortgagee's interest if the mortgagee takes the prescribed steps to secure its claim. The language further indicates a recognition by plaintiff that defendant had an interest in the policy separate and distinct from the owners' interest. It is also apparent that defendant acquired an interest in the insurance policy with the insurer's consent. We therefore find that an independent contractual relationship was created between the parties and that the denial of the owners' claim does not necessarily apply to defendant's interest. See *Salemi*, 158 Ill. App. 3d at 247 (where the language of the policy indicated that the defendant and the insurer had an independent contractual relationship, the defendant could recover, although the named insured was allegedly involved in arson that damaged the insured property).

¶ 27    Having concluded that the denial of the owners' interest in the policy did not necessarily affect defendant's claim, we consider plaintiff's argument that GMACM was obligated to notify plaintiff of a change in occupancy or substantial change of risk under the mortgage clause. Plaintiff maintains GMACM should have been aware that the owners were not occupying the property before the fire because (1) CoreLogic's field agents inspected the

property premises on five occasions before the fire and a field agent communicated with a "tenant" on the fifth occasion; (2) CoreLogic's field agents could reasonably have discovered that the mail in the mailbox was addressed to the tenants and not the owners; (3) if GMACM had sent collection letters to the owners at the property, the letters would have "bounced"; and (4) GMACM should have known the owners were not responding to its letters. Plaintiff contends that, accordingly, there is a question of fact as to when GMACM first learned the owners did not occupy the property, and thus, summary judgment is not appropriate.

¶ 28    Based on our review of the record, we find plaintiff has presented no evidence to establish GMACM was aware the owners were not occupying the property prior to the fire. The first four inspection reports provided by CoreLogic do not indicate who occupied the property. Also, while the fifth report indicates that a CoreLogic inspector communicated with a "tenant," plaintiff has failed to present evidence that notice to CoreLogic constituted notice to GMACM. Further, assuming *arguendo* that GMACM had notice due to CoreLogic's fifth inspection report, the mortgage clause is silent as to when notice to plaintiff is required. Under a different clause, entitled "Your Duties After Loss," the policy provides that in case of a loss to covered property, the insured must give "prompt notice" to plaintiff. There, the policy is explicit as to when notice is required. Under subparagraph (a) of the mortgage clause, however, the policy only provides that GMACM is to "notif[y]" plaintiff of any change in occupancy of which it "is aware." Therefore, even if GMACM had notice due to the fifth inspection report, plaintiff fails to demonstrate that defendant had an obligation to notify plaintiff prior to the incident in question, which occurred three days after the fifth inspection. Thus, from the language of the policy and the evidence presented in this case, there is no way to determine whether defendant failed to comply with the notice requirement.

¶ 29    In addition, contrary to plaintiff's argument, there is no evidence in the record that CoreLogic's field agents opened the mailbox on the property to determine who the mail was addressed to or that CoreLogic was authorized to do so. Plaintiff also offers no evidence to establish that GMACM sent any collection letters to the owners at the property that later "bounced." Plaintiff further fails to provide evidence that GMACM knew the owners were not responding to its letters. In light of the foregoing, plaintiff has failed to provide evidence that GMACM was aware the owners were not occupying the property before the fire. Accordingly, we find plaintiff has failed to meet its burden of demonstrating that defendant's claim is excluded under the mortgage clause. *Old Second*, 2015 IL App (1st) 140265, ¶ 22 (the insurer bears the burden of demonstrating a claim falls within a provision that limits or excludes coverage) (citing *Farmers Automobile Insurance Ass'n v. Gitelson*, 344 Ill. App. 3d 888, 896 (2003)).

¶ 30    Furthermore, the plain language of the mortgage clause requires that GMACM notify plaintiff "of any change in ownership, occupancy or substantial change in risk of which the mortgagee is aware." See *Central Illinois Light Co.*, 213 Ill. 2d at 153 (where the words of an insurance policy are clear and ambiguous, they must be given their plain and ordinary meaning). Our review of the record reveals the owners had already leased the property to tenants before plaintiff issued the policy. Moreover, plaintiff does not deny that the owners did not occupy the property at the time the policy was issued. As such, even if GMACM had reason to be aware that the owners did not occupy the property before the fire, it had no obligation to notify plaintiff because there was no change in occupancy to report. Accordingly, we find that, even if there is a question of fact as to when GMACM first learned that the owners

did not occupy the property, it is irrelevant in determining whether GMACM complied with the conditions enumerated in the mortgage clause. Based on the foregoing analysis, we conclude that defendant was entitled to judgment as a matter of law and the circuit court correctly entered summary judgment in its favor. 735 ILCS 5/2-1005(c) (West 2014).

B. Fraud Clause

Plaintiff next asserts that defendant's recovery is barred by the fraud clause that provides, the "entire policy will be void, if whether before or after a loss, an 'insured' has" "[i]ntentionally concealed or misrepresented any material fact or circumstance," "[e]ngaged in fraudulent conduct," or "[m]ade false statements." According to plaintiff, this provision applies to all insureds, *i.e.*, the owners and defendant.

We find *Salemi* to be instructive. In that case, the insured allegedly set fire to the insured property and thereafter the named loss payee filed a claim for insurance. *Salemi*, 158 Ill. App. 3d at 244. The insurer argued the loss payee's recovery was barred by a fraud clause in the insurance policy that used language similar to the fraud clause in the instant case. The fraud clause in *Salemi* provided, in pertinent part:

> " 'This policy is void if any insured has intentionally concealed or misrepresented any material fact or circumstances relating to this insurance.' " *Id.* at 247.

The insured and the loss payee in *Salemi* also had a sales contract for the property that expressly subjected the loss payee to " 'all other terms, provisions and conditions' " of the insurance policy, including the fraud clause. *Id.* As in the case currently before this court, the insurer in *Salemi* contended that the fraud clause rendered the insurance policy void as to both the insured and the loss payee. *Id.* at 247-48. In its determination, the *Salemi* court noted that the fraud clause did not expressly state that, as a result of the wrongdoing of the insured, the insurance policy will be void as to all insureds or that the policy will be void only as to the guilty insured. *Id.* at 248. The *Salemi* court went on to find that, as the loss payee had a separate and independent contractual relationship with the insurer that was independent from the insured, the fraud clause could have either meaning. *Id.* at 248-49. Under these circumstances, the *Salemi* court found it was reasonable for the loss payee to have understood he had an independent claim in the policy that would not be affected by the insured's wrongdoing. *Id.* at 249. The *Salemi* court further found that if the insurer had intended for both the insured and the loss payee to be barred in the event of the insured's wrongdoing, its intent should have been expressly and clearly stated in the policy. *Id.* Based on this analysis, the *Salemi* court concluded that the insurer's violation of the fraud clause was irrelevant to recovery by the loss payee. *Id.* (citing *Economy Fire & Casualty Co. v. Warren*, 71 Ill. App. 3d 625 (1979)).

Similarly, in the case at bar, the fraud clause does not state whether, in the event of the owners' wrongdoing, the policy will be void only as to the owners or also to defendant. Like the *Salemi* court, we have already found a separate and independent insurance policy existed between the parties. Therefore, as in *Salemi*, we find that in the absence of an express statement that the policy will be void as to both the owners and defendant, it is reasonable for defendant to believe that its interest was separately covered by the policy and that any wrongdoing by the insured would not prevent its recovery. See *id.* Accordingly, we find the owners' alleged violation of the fraud clause is irrelevant to recovery by defendant. *Id.*

We further find plaintiff's reliance on *Vision Financial Group, Inc. v. Midwest Family Mutual Insurance Co.*, 355 F.3d 640 (7th Cir. 2004), is neither persuasive nor relevant here

because *Salemi* is binding on this court. "Only in the absence of Illinois authority on the point of law in question are we to look to other jurisdictions for persuasive authority." *Allstate Insurance Co. v. Lane*, 345 Ill. App. 3d 547, 552 (2003).

¶ 36    Nonetheless, unlike in *Vision*, the mortgage clause and the fraud clause in the instant case do not state that all terms of the policy, including the policy's exclusions, apply to the loss payee. *Vision Financial Group, Inc.*, 355 F.3d at 642. Moreover, while the loss payee in *Vision* voluntarily leased the computer equipment to the insured and caused coverage to be precluded under the false pretense clause, defendant's action did not bar coverage under the fraud clause. *Id.* Rather, plaintiff argues coverage is barred because the owners leased the property. Thus, *Vision* does not persuade us that the fraud clause in the policy bars defendant's claim. Additionally, we note that if we were to find that the fraud clause did bar defendant's recovery, it would in effect overrule our previous finding that defendant may recover under the standard mortgage clause despite the owners' misconduct. *Old Second*, 2015 IL App (1st) 140265, ¶ 20. Based on the foregoing analysis, we conclude the fraud clause does not bar defendant's recovery. See *Salemi*, 158 Ill. App. 3d at 249.

¶ 37                                        CONCLUSION

¶ 38    For the reasons stated, we affirm the judgment of the circuit court of Cook County.

¶ 39    Affirmed.