**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

2023 IL App (3d) 220111-U

Order filed March 27, 2023

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2023

| | | |
|---|---|---|
| In re MARRIAGE OF LAURA P. STREZO, n/k/a LAURA P. STREPEK, | ) ) ) | Appeal from the Circuit Court of the 12th Judicial Circuit, Will County, Illinois. |
| Petitioner-Appellee, | ) ) | |
| and | ) ) | Appeal No. 3-22-0111 Circuit No. 15-D-1145 |
| | ) | |
| JOSEPH W. STREZO, | ) ) | The Honorable David Garcia, |
| Respondent-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE HETTEL delivered the judgment of the court.
Justices Brennan and Peterson concurred in the judgment.

_____

**ORDER**

¶ 1    *Held*:   Trial court did not err in (1) denying father's motion to modify parenting plan, or (2) striking provision of parenting plan that conflicted with another provision regarding holiday parenting time.

¶ 2    Petitioner Laura P. Strezo, n/k/a Laura Strepek, and respondent Joseph W. Strezo divorced in 2016. When the court entered the Judgment of Dissolution of Marriage, it also entered a Final Parenting Plan and Judgment (Plan), which the parties approved. In 2018 and 2020, the parties and court agreed that various provisions of the Plan should be modified. In 2021, Joseph filed a motion

to modify the Plan, as well as a motion to enforce or clarify the Plan. The trial court entered an order (1) denying Joseph's motion to modify, and (2) clarifying the Plan by deleting section 3.11 because it conflicted with another provision. Joseph appeals, arguing that the trial court erred in denying his motion to modify the Plan and deleting section 3.11 of the Plan. We affirm.

¶ 3                                                      I. BACKGROUND

¶ 4            The parties, Laura and Joseph, were married in 2006. During their marriage, they had two children together: J.S., who was born in 2008, and S.S., who was born in 2012. In 2015, Laura filed a petition for dissolution of marriage, and Joseph filed a counterpetition for dissolution of marriage.

¶ 5            On April 15, 2016, the circuit court entered a Judgment for Dissolution of Marriage, which incorporated a Marital Settlement Agreement. On the same date, the court entered the Plan, which was approved by the court and the parties. Section 3.1 of the Plan states that Laura "is designated as the parent with the majority of the parenting time with the minor children" and that she "shall have parenting time with the minor children at all times not specifically designated as JOSEPH'S parenting time." Section 3.2 of Plan provided Joseph with parenting time with the children (1) on alternating weekends from Friday at 5:00 p.m. until Sunday at 8:00 p.m., (2) every Wednesday after school/daycare until 8:00 p.m., and (3) on Mondays following Laura's weekends after school/daycare until 8:00 p.m. Section 3.2(c) of the Plan provided that "JOSEPH shall be primarily responsible for the transportation of the minor children (both pick up and drop off) to facilitate his contact with the children[.]"

¶ 6            Section 3.5 of the Plan addresses the "Holiday parenting schedule" and provides: "Unless otherwise specified herein or by written agreement, all holiday parenting time shall be from 9:00 a.m. to 8:00 p.m., unless the parties otherwise agree in writing." Fourteen holidays are listed in

2

section 3.5: Easter, Memorial Day weekend, Independence Day, Labor Day weekend, Thanksgiving weekend, Christmas Eve, Christmas Day, New Year's Eve, New Year's Day, Mother's Day, Father's Day, Halloween, J.S.'s birthday and S.S.'s birthday. Section 3.11 of the Plan addresses "Holidays and Special Periods" and provides: "In the event of a holiday or special period, the holiday or special period for the purposes of this residential/visitation schedule shall commence at 6:00 p.m. on the day prior to the holiday or special period and end at 8:00 p.m. on the day of the holiday or the last day of the special period, except as otherwise specified herein."

¶ 7        Section 3.17 of the Plan addressed the "Right of First Refusal" and provided in relevant part:

> "In the event either LAURA or JOSEPH is unable to or chooses not to exercise his or her right to parenting time with the minor children pursuant to the terms of the Agreement, or in the event that either parent shall be apart from the minor children for a period of time of 6 hours or more during his or her parenting time, then that parent shall make the children available to the other parent before he or she grants access to the children to an unrelated 3rd party."

¶ 8        On September 22, 2017, Joseph filed a motion to modify the Plan seeking changes to the parenting schedule, the transportation provision, and the right of first refusal provision. On February 20, 2018, the court entered an agreed order modifying sections 3.2 and 3.17 of the Plan. The agreed order provided Joseph parenting time with the children (1) on alternating weekends from Friday after school through Tuesday morning, and (2) on alternating weeks Monday after school through Tuesday morning. The transportation provision was modified to provide that when the children are out of school and Laura is not working, the parties would share the responsibility for transportation with each parent picking up the children at the start of their parenting time.

Additionally, the order struck the "Right of First Refusal" provision contained in the Plan and replaced it, in relevant part, with the following language:

"(i)    There shall be no right of first refusal in the event that the parent having parenting time with the children is unavailable for a period of less than six (6) hours.

(ii)    In the event that the parent having parenting time with the minor children is unavailable to exercise his/her parenting time due to work, social plans or other personal reasons for a period of time exceeding six (6) continuous hours, that parent shall offer the other parent a right of first refusal to care for the minor children during the time that the parent will be unavailable prior to engaging another caregiver for the parent. The right of first refusal may only be exercised by the other parent, who must then be personally present with the children during the time when the other parent is unavailable. The parent choosing to exercise his/her right of first refusal to care for the children during the time that the other parent is unavailable will provide transportation of the children to/from his or her residence, in the absence of other written agreement."

¶ 9        On May 20, 2019, Joseph filed a motion to reallocate parenting time and re-designate the custodial parent, seeking an order granting him "the majority of parenting time," designating him the "custodial parent for legal and school purposes," and allowing Laura "reasonable parenting time." On October 8, 2019, Laura filed a motion to modify parenting time seeking to reduce Joseph's parenting time during the school year but increase it during the summer. On January 3, 2020, the court entered an agreed order again modifying section 3.2 of the parenting plan. Pursuant to the agreed order, during the school year, Joseph had parenting time with the children (1) on alternating weekends from Thursday after school until Monday morning, and (2) on alternating

4

weeks from Thursday after school until Friday morning. During the summer, Joseph and Laura had alternating one-week periods of parenting time with the children beginning on Sunday at 8:00 p.m.

¶ 10       On November 13, 2020, Joseph filed a motion to decrease child support. At a hearing held on February 21, 2021, Laura's counsel asserted that Laura generally allowed Joseph to have parenting time with the children the night before his holidays but that Joseph refused to allow Laura to do the same. Joseph testified at the hearing that Laura allowed his parenting time to start the night before his birthday but denied Laura's request to begin her holiday parenting time with the children the night before Halloween.

¶ 11       On June 7, 2021, Joseph filed a motion to modify the Plan, requesting that the court modify (1) the holiday parenting schedule for Memorial Day, Labor Day, and Thanksgiving to make it consistent with the parenting time he and Laura had been exercising, (2) the right of refusal provision to require at least one overnight stay if a party offers the other parent the right of first refusal for more than two consecutive days, and (3) the transportation provision so that driving would "be shared equally between the parties." On the same date, Joseph filed a motion to enforce or, alternatively, clarify parenting time, seeking clarification of sections 3.5 and 3.11 of the Plan. Joseph requested: "That if the Court finds that paragraphs 3.5 and 3.11 contradict one another, that the Court allow that each party have the children the night before a holiday to enforce what the parties have already been practicing with the children."

¶ 12       Laura filed an answer to Joseph's motion to modify parenting time denying that she and Joseph had been exercising holiday parenting time for Memorial Day, Labor Day, and Thanksgiving in derogation of the Plan. Laura also filed an answer to Joseph's motion to enforce or clarify denying that she and Joseph regularly exercised holiday visitation the night before a

5

holiday and asserted that "paragraph 3.11 applies only to holidays or special periods where specific times are not otherwise specified elsewhere in the Final Parenting Plan."

¶ 13    At a hearing on June 23, 2021, Laura's counsel asserted that "there have been years of disagreement between the parties" regarding holiday parenting time. According to Joseph's counsel, the parties "had always followed that provision that the overnights were before [holidays]." Laura's counsel disagreed, stating:

> "[Joseph] makes demands all the time that aren't in the judgment insisting that he have – that his birthday be a holiday and that he keep the children for his birthday or he asks for an overnight for Memorial Day and my client says okay, you can have this overnight if I can have Labor Day overnight. He agrees. She gives him the overnight for Memorial Day and then he says, oh, I changed my mind, you can't have the overnight for Labor Day.

> So I mean it's this back and forth that has constantly been going on, and they really need just a very clear ruling stating this is what they're going to follow, and as long as there is this, you know, supposed conflict between these two paragraphs of the judgment, that's not going to happen."

The trial court found that holiday parenting was a matter of "he say[s], she say[s]" with Joseph's counsel asserting that the parties "had an agreement before that they were following" and Laura's counsel denying there was any agreement or regular practice with respect to when holiday parenting time began.

¶ 14    At a hearing on February 24, 2022, counsel for the parties again disagreed about how the parties had been handling holiday parenting time. Joseph's counsel asserted that for "over three years they had practiced 3.11 as if there was no dispute over it, which meant that they exercised

the overnight prior to the holidays." Laura's counsel asserted that the parties did not regularly follow section 3.11 and stated that "there have been continual conflicts between the parties over the holidays." Laura's counsel admitted that the parties sometimes deviated from section 3.5 to allow overnights before a holiday but that was not consistently done. Laura's counsel asserted that there were "continual conflicts" and "continual disagreements" because Laura would allow Joseph to have parenting time the night before a holiday, but "[w]hen the next holiday rolled around, he'd say, No, you don't get the night before."

¶ 15    The trial court concluded that having both sections 3.5 and 3.11 in the Plan was "confusing." The court chose to strike section 3.11, explaining that provision was "just leaving it open for argument and – and abuse." On February 25, 2022, the court entered an order which provided in relevant part:

"1. The court finding that confusion exists between paragraph 3.5 and paragraph 3.11 of the Final Parenting Plan and Judgment entered April 15, 2016, paragraph 3.11 is hereby stricken and the holiday times shall be determined pursuant to paragraph 3.5 of the Final Parenting Plan and Judgment and subsequent orders. Holidays shall not begin the night before the designated holiday under paragraph 3.11, regardless of any alleged past practice.

2. Respondent's Motion to Modify Final Parenting Plan is denied and there shall be no modifications to holiday times, driving responsibilities, and right of first refusal, regardless of any alleged past practice."

¶ 16                                    II. ANALYSIS

¶ 17    The Illinois Marriage and Dissolution of Marriage Act (Act) (750 ILCS 5/101 *et seq.* (West 2020)) favors "the finality and continuity of parenting plans." *In re Marriage of Burns*, 2019 IL

App (2d) 180715, ¶ 29 (citing *In re Marriage of O'Hare*, 2017 IL App (4th) 170091, ¶ 27). As such, a party seeking to modify provisions of a parenting plan bears the burden of showing why a change should be made. See *Marcus v. Marcus*, 24 Ill. App. 3d 401, 407 (1974); *Hirth v. Hirth*, 59 Ill. App. 2d 240, 243 (1965).

¶ 18 Modification of a parenting plan is governed by section 610.5 of Act (750 ILCS 5/610.5 (West 2020)). Section 610.5(c) provides in relevant part:

> "[T]he court shall modify a parenting plan or allocation judgment when necessary to serve the child's best interests if the court finds, by a preponderance of the evidence, that on the basis of facts that have arisen since the entry of the existing parenting plan or allocation judgment or were not anticipated therein, a substantial change has occurred in the circumstances of the child or of either parent and that modification is necessary to serve the child's best interests." *Id*. § 610.5(c).

Section 610.5(e) provides in relevant part:

> "(e) The court may modify a parenting planning or allocation judgment without a showing of changed circumstances if (i) the modification is in the child's best interests; and (ii) any of the following are proven as to modification:
>
> (1) the modification reflects the actual arrangement under which the child has been receiving care, without parental objection, for the 6 months preceding the filing of the petition for modification, provided that the arrangement is not the result of a parent's acquiescence resulting from circumstances that negated the parent's ability to give meaningful consent; [or]
>
> (2) the modification constitutes a minor modification in the parenting plan or allocation judgment ***." *Id*. § 610.5(e)(1)-(2) (West 2020).

8

¶ 19 The modification provisions of the Act reflect "an underlying policy favoring the finality of child-custody judgments and making their modification more difficult." *In re Marriage of Wechselberger*, 115 Ill. App. 3d 779, 786 (1983). The effect of the provisions "is to create a legislative presumption in favor of the present custodian, thereby promoting the stability and continuity of the child's custodial and environmental relationship which is not to be overturned lightly." *Id*.

¶ 20 Because the Act favors "the finality and continuity of parenting plans," a modification should be considered "minor" under section 610.5(e)(2) only in very limited circumstances when it is "small" or "inconsequential." *Burns*, 2019 IL App (2d) 180715, ¶ 29 (citing *O'Hare*, 2017 IL App (4th) 170091, ¶¶ 27, 28). When making minor modifications to parenting plans, trial courts must ensure that the parenting plan's original intent remains intact. *In re Marriage of Wendy S.*, 2020 IL App (1st) 191661, ¶ 25. A trial court's decision to strike a provision of a parenting plan that is minor when viewed in context of the entire plan and does not diminish the spirit of the overall plan is not against the manifest weight of the evidence or an abuse of discretion. See *id.* ¶¶ 25-26.

¶ 21 When deciding issues pertaining to child custody and parenting time, the trial court has broad discretion, and its judgment is afforded great deference. *Wendy S.*, 2020 IL App (1st) 191661, ¶ 22. A reviewing court will not disturb a trial court's decision regarding modification of a custody agreement unless the decision is against the manifest weight of the evidence or an abuse of discretion. *In re Marriage of Debra N.*, 2013 IL App (1st) 122145, ¶ 45. "A judgment is against the manifest weight of the evidence only if appears that a contrary conclusion is clearly evident." *In re Marriage of Ward*, 267 Ill. App. 3d 35, 41 (1994). "An abuse of discretion occurs only when no reasonable person could find as the trial court did." *Id.*

9

¶ 22          A. Court's Denial of Joseph's Motion to Modify Parenting Time

¶ 23          Joseph first argues that the trial court erred in denying his motion to modify parenting time in which he sought changes to the existing Plan with respect to (1) parenting time on certain holidays, (2) transportation responsibilities, and (3) the right of first refusal.

¶ 24          For the trial court to grant Joseph's motion to modify parenting time, Joseph had the burden of proving that (1) a modification was necessary to serve the children's best interests, and (2) either (i) "a substantial change has occurred in the circumstances of the child or of either parent" since the entry of the existing parenting plan, or (ii) "the modification reflects the actual arrangement under which the child has been receiving care, without parental objection, for the 6 months preceding the filing of the petition for modification." See 750 ILCS 5/610.5(c), (e) (West 2020); *In re Marriage of Vickers*, 2022 IL App (5th) 200164, ¶ 47.

¶ 25          Here, the trial court properly denied Joseph's motion to modify parenting time because Joseph presented no evidence, or even argument, that any of the changes to the Plan he proposed were in the best interests of J.S. and S.S. Absent proof that the modifications Joseph sought were in the best interests of the children, the court was obligated to deny Joseph's motion. See 750 ILCS 5/610.5(c), (e) (West 2020); *Vickers*, 2022 IL App (5th) 200164, ¶ 47.

¶ 26          Not only did Joseph fail to meet his burden of proving his requested modifications to the Plan were in the children's best interests, he also failed to prove the changes were warranted because of a "substantial change" in circumstances or the "actual arrangement" of the parties. See 750 ILCS 5/610.5(c), (e) (West 2020). Joseph never even alleged, let alone proved, that any of the changes he sought were warranted because a "substantial change has occurred in the circumstances of the child or of either parent." Additionally, while Joseph alleged in his motion to modify that he and Laura have not been following the Plan with respect to parenting time on certain holidays,

10

such as Labor Day, Memorial Day, Thanksgiving, and Independence Day, Laura denied that allegation. Joseph never presented any evidence establishing that the modification of parenting time he sought with respect to certain holidays reflected the actual arrangement under which he and Laura have been operating for more than six months. With respect to his requests to modify the parties' transportation responsibilities and rights of first refusal, Joseph never alleged that he and Laura had already been implementing the modifications he sought.

¶ 27    Because Joseph failed to meet his burden of proving any of the requirements necessary for modification of the Plan, the trial court's decision to deny Joseph's motion to modify was not against the manifest weight of the evidence or an abuse of discretion.

¶ 28                                  B. Court's Striking of Section 3.11

¶ 29    Joseph also argues that the trial court's decision to strike section 3.11 of the Plan was against the manifest weight of the evidence or an abuse of discretion because the evidence established that he and Laura had been consistently following that provision when exercising holiday parenting time. We disagree.

¶ 30    Here, as the trial court found, the issue of how the parties were exercising holiday parenting time was a matter of "he say[s], she say[s]." Joseph asserted that the parties consistently allowed each other to begin holiday parenting time the night before a holiday, while Laura asserted that Joseph regularly denied her overnight visits preceding holidays. Joseph's own testimony supported Laura's assertion. At a hearing in February 2021, Joseph testified that Laura allowed him to begin his parenting time the night before his birthday, but he refused to allow Laura to begin parenting time the night before Halloween.

¶ 31    The trial court found the existence of both sections 3.5 and 3.11 in the Plan "confusing" because section 3.5 states that holiday parenting time begins at 9:00 a.m. on the day of a holiday,

11

while section 3.11 states that holiday parenting time begins at 6:00 p.m. on the day before a holiday. Because these provisions are inconsistent, the trial court found it necessary to strike one of them to avoid disagreements between the parties. Finding there was no consistent past practice regarding when holiday parenting time began, despite Joseph's assertion to the contrary, the trial court was left to decide which of the two provisions to strike. The trial court's decision to strike section 3.11 of the Plan was not against the manifest weight of the evidence or an abuse of discretion because the change was minor when viewed in context of the entire Plan and does not diminish the overall spirit of the Plan. See *Wendy S.*, 2020 IL App (1st) 191661, ¶¶ 25-26.

¶ 32 Additionally, Joseph's objection to the trial court's striking of section 3.11 of the Plan is not well founded because Joseph asked the court for clarification of sections 3.5 and 3.11 of the Plan because they appeared to "contradict one another." "[A] party cannot claim as error that which it has induced." *Old Second National Bank v. Indiana Insurance Co.*, 2015 IL App (1st) 140265, ¶ 41. "Under the doctrine of invited error, a party may not request or induce the trial court to proceed in one manner and later contend on appeal that the course of action was in error." *Id.*

¶ 33 Here, because Joseph sought clarification from the court about the apparent conflict between sections 3.5 and 3.11 of the Plan, we reject Joseph's argument that the trial court erred in striking one of those provisions. See *id.* The court found it necessary to strike section 3.11 of the Plan to prevent further disagreements and abuse by the parties. Under these circumstances, the court's decision to strike section 3.11 of the Plan was not against the manifest weight of the evidence or an abuse of discretion.

¶ 34                                    III. CONCLUSION

¶ 35         The judgment of the circuit court of Will County is affirmed.

¶ 36         Affirmed.